**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO.: 1:19-CV-20277-KMM**

MELISSA COMPERE,

           Plaintiff,

vs.

NUSRET MIAMI, LLC d/b/a NUSR-ET
STEAKHOUSE, and NUSRET GOKCE,

           Defendants.

---

**DEFENDANTS' MOTION TO COMPEL ARBITRATION
AND INCORPORATED MEMORANDUM OF LAW**

      Defendants Nusret Miami, LLC d/b/a Nusr-Et Steakhouse ("Nusret Miami") and Nusret Gökçe (collectively, "Defendants"), pursuant to 9 U.S.C. § 1 *et seq*., moves for the entry of an order striking the collective claims and compelling Plaintiff Melissa Compere and Opt-In Plaintiffs Valdo Sulaj and Diego Vargas (collectively, "Plaintiffs") to prosecute their individual claims, if at all, in arbitration. In support, Defendants state:

**I.    INTRODUCTION**

      Plaintiff Melissa Compere's recent collective action was filed in direct violation of an enforceable arbitration agreement and collective action waiver between her and Defendants. Plaintiff and Opt-In Plaintiffs Valdo Sulaj and Diego Vargas accepted employment on the express condition that they submit any disputes related to their employment, including any disputes under the Fair Labor Standards Act, to arbitration. Notably, the parties' agreement also ***expressly prohibits*** collective adjudication of disputes. Despite the unequivocal language of the agreement on this point, Plaintiff filed this collective action, and Opt-in Plaintiffs Sulaj and

Vargas opted in to the litigation. In fact, though the pleadings are not yet settled, Plaintiff has recently filed a motion to conditionally certify the collective, a clear attempt to avoid the operation of the collective action waiver.

The United State Supreme Court's recent ruling in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018) made clear that class and collective action waivers in employment arbitration agreements ***must be enforced as written***. *Id.* at 1632. Thus, according to *Epic Systems*, Plaintiff and Opt-In Plaintiffs must individually arbitrate their claims. Plaintiffs should also be immediately compelled to arbitration on the additional ground that they agreed to delegate all gateway issues to the arbitrator. Under other recent Supreme Court precedent, delegation clauses are enforceable, and a district court has ***no authority*** to consider issues of arbitrability when one is present. *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 525 (2019).

Plaintiffs and Defendants are parties to a valid arbitration agreement covering this dispute, and pursuant to controlling precedent, Plaintiffs are required to individually arbitrate each of their claims in accordance with the terms of that arbitration agreement.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Parties and Procedural History

Plaintiff Compere was hired to work for Nusret Miami beginning on October 17, 2018, and she worked in various positions until she was terminated on November 16, 2018. Declaration of Belen Rodriguez ("Rodriguez Decl."), ¶ 10, attached as **Exhibit 1**. Opt-In Plaintiff Sulaj was hired to work beginning on October 10, 2017, and he held the position of Meat Cutter when he left on May 17, 2018. *Id.* at ¶ 11. Opt-In Plaintiff Vargas, a current employee working as a Meat Cutter, began his employment with Nusret Miami on October 10, 2017. *Id.* at ¶ 12.

Plaintiff filed a collective action complaint on January 22, 2019 in this Court alleging violations of the Fair Labor Standards Act ("FLSA"), including claims for (1) failure to pay minimum wage; (2) failure to pay overtime; (3) declaratory relief. [D.E. 1.]  On March 4, 2019,

Nusret Miami filed a Partial Answer and a Partial Motion to Dismiss on the ground that Plaintiff failed to state a claim for declaratory relief. [D.E. 8 & 9.] On March 29, 2019, Gökçe filed a Partial Answer and joined Nusret Miami in its Motion to Dismiss. [D.E. 32.]

On March 12, 2019, Plaintiff filed her and Diego Vargas' Consents to Join the action. [D.E. 15.] On March 15, 2019, Plaintiff filed Sulaj's Consent to Join. [D.E. 20.] On March 12, 2019, before the pleadings were settled[1], Plaintiff filed a Motion to Certify 216(b) Collective Action and Facilitate Notice to Potential Class Members ("Plaintiff's Motion"). [D.E. 19.]

In support of their Opposition to Plaintiff's Motion, Defendants took the deposition of Compere and Vargas on March 25, 2019, and they took Sulaj's deposition on March 28, 2019.

> **B. Nusret Miami Required Its Employees to Agree to Arbitrate Any Employment-Related Claims as a Condition of Their Employment, and Each Plaintiff Agreed.**

In preparation for the opening of the Nus-Ret Steakhouse in Miami in November 2017, Nusret Miami onboarded scores of employees in September and October 2017, including Compere, Sulaj, and Vargas. Rodriguez Decl. ¶ 6. Nusret Miami required all employees to agree to binding arbitration as a condition of employment, and its onboarding practices reflected that requirement. *Id.* at ¶ 7. First, Nusret Miami provided an Employment Offer Letter that explicitly referenced the requirement to arbitrate. *Id.* at ¶¶ 7, 10, 11, Exs. A, B. The Offer Letters also specifically require each employee to "acknowledge that this Offer and the Arbitration Agreement, contain the entire agreement of the parties with respect to its subject matter and supersedes any previous discussions or negotiations." *Id.* at p. 2. Plaintiff Compere and Opt-In Plaintiff Sulaj acknowledged and accepted the terms of employment, including the requirement to arbitrate, and signed immediately below the sentence that stated, "I have read and understood

---

[1] Plaintiff filed a Response to the Partial Motion to Dismiss on March 26, 2019, and Nusret Miami replied on April 2, 2019. [D.E. 26, 34.] The briefing is now complete.

the provisions of this offer of employment, and accept employment on the terms stated above." *Id.* Later, during or after orientation, to reiterate the requirement to submit any employment-related dispute to arbitration, employees were required to sign the Arbitration Agreement that had previously been acknowledged and agreed to. *E.g.*, Rodriguez Decl. ¶¶ 8, 9, 12, Ex. C.

The Arbitration Agreement, which was incorporated by reference in the Offer Letter, is between Plaintiffs and Nusret Miami (and any other associated parties). *See id.* at p. 1. The Agreement provides that it is governed by the Federal Arbitration Act ("FAA") and that arbitration will be administered under the American Arbitration Association's Employment Arbitration Rules and Mediation Procedures. *Id.* at p. 1.

The Agreement expressly applies to "any and all controversies, disputes or claims arising out of Employee's employment by Nusret Miami, LLC." *Id.*; *see also id.* ("**All claims or disputes by the parties (and any other person or entities associate with Nusret) will be arbitrated individually**") (emphasis in original). The Arbitration Agreement also specifically covers claims under the FLSA:

> Claims subject to arbitration, include, without limitation, claims arising under . . . the Fair Labor Standards Act of 1938, . . . and any other Federal, State or local law, . . ., and any other claims . . . arising out of or related to Employee's performance of services for, and/or the termination of his or her contract with, Nusret.

*Id.* Therefore, Plaintiffs' claims are covered under the express terms of the Arbitration Agreement.

**C.     The Arbitration Agreement Expressly Precludes Collective Claims.**

Plaintiffs bring this case as a collective action under the FLSA, but the Arbitration Agreement expressly precludes such actions:

> **All claims or disputes between the parties (and any other persons or entities associated with Nusret) will be arbitrated individually; the parties understand and agree that they will**

> **not consolidate their claims with the claims of any other individually or entity; will not seek class or collective action treatment for any claim that they may have; and will not participate in any class or collective action against each other or against any persons or entities associated with each other.**

Rodriguez Decl., Ex. C at pp. 1-2 (emphasis in original).

In addition, right above the signature line, the Agreement reiterates the waiver of the right to participate in class or collective relief:

> If at any time the Employee is made a member of a class in any proceeding, he or she will "opt out" at the first opportunity, and should any third party pursue any claims on the Employee's behalf, the Employee must waive his or her rights to any such monetary recovery.

*Id.* at p. 2.

Because the Arbitration Agreement covers all of Plaintiffs' claims and precludes collective claims, Plaintiffs must arbitrate their claims on an individual basis only.

### III. THE COURT MUST STAY ALL FURTHER PROCEEDINGS AND COMPEL PLAINTIFFS TO PURSUE THEIR CLAIMS IN ARBITRATION

#### A. The Federal Arbitration Act Governs Plaintiffs' Claims.

The FAA, 9 U.S.C. § 1 *et seq.*, applies to agreements "involving commerce." 9 U.S.C. § 2. The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). Moreover, under the Supremacy Clause, U.S. Const. art. VI, cl. 2, the FAA preempts all otherwise applicable or conflicting state laws. *Preston v. Ferrer*, 552 U.S. 346, 356-57 (2008); *see also Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1427 (2017); *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)) ("The Federal Arbitration Act

is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act. Consequently, the judges of every State must follow it."); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) ("In enacting Section 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agree to resolve by arbitration.").

In *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), the U.S. Supreme Court reaffirmed the long line of cases upholding arbitration in the employment context. The *Rent-A-Center* Court emphasized the core concept that arbitration agreements be "***enforce[d] according to their terms***." *Id.* at 67 (emphasis added). Therefore, where an arbitration agreement governed by the FAA covers a dispute, the resolution of that dispute is exclusively committed to the arbitral forum.

The Arbitration Agreement here provides that it is governed by the FAA and involves commerce. Rodriguez Decl. ¶ 12, Ex. C at p. 1. Nusret Miami operates Nusr-Et Steakhouse Miami, an upscale, high volume restaurant offering steakhouse-type cuisine at a high price point in Miami, Florida. *Id.* at 5. It caters to guests from all over the world. *Id.*; *see also* Compl. ¶¶ 6-8 (alleging that Nusr-Et Steakhouse purchased ingredients from across state lines). Thus, the Arbitration Agreement plainly involves commerce and is governed by the FAA. *See, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121-24 (2001) (reversing a decision that declined to extend the FAA to an arbitration agreement between a local store employee and a nationwide retailer); *see also Kim v. Hopfauf*, No. 1:15-cv-9127, 2017 WL 85441 (N.D. Ill. 2017) (finding interstate commerce when party purchased goods through interstate commerce and regularly processed credit card payments for customers).

### B. Federal Law Mandates Arbitration of Plaintiff's Individual Claims.

The FAA was enacted "in response to widespread judicial hostility to arbitration." *Am. Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2308-09 (2013) (citing *Concepcion*, 563 U.S. at 339). Accordingly, the FAA's "principal purpose . . . is to ensure that private arbitration agreements are enforced according to their terms." *Concepcion*, 563 U.S. at 344; *see also Epic Systems*, 138 S. Ct. at 1621. Section 2 of the FAA provides, in relevant part, that "[a] written provision in any . . . contract . . . involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract." *Concepcion*, 563 U.S. at 339 (internal citations and quotations omitted); *see Epic Systems*, 138 S.Ct. at 1621; *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005).

"In line with these principles, courts must place arbitration agreements on an equal footing with other contracts" and "enforce them according to their terms." *Concepcion*, 563 U.S. at 339 (internal citations and quotations omitted). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). When considering whether a contrary congressional command is present, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). Significantly, the party opposing arbitration bears the burden of proving that Congress intended to preclude arbitration of the claims asserted. *Id.*

Under the FAA, an arbitration agreement must be enforced, as written, where a valid, written agreement exists and the claims made are within the scope of the agreement. *Byrd*, 470 U.S. at 217, 221. Any doubts are resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v Mercury Constr. Corp.*, 460 U.S. 1, 24-35 (1983).

      **C.**    **The Arbitration Agreement Is Valid and Enforceable and Covers Plaintiffs' Claims.**

"By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). When considering whether a contrary congressional command is present, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

Normally, in deciding whether to compel arbitration, a court is charged with determining two "gateway" issues in response to a motion to compel arbitration: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002); *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (same). But, like here, there is an exception to this general rule when "the parties clearly and unmistakably provide otherwise." *AT&T Tech., Inc. v. Comm. Workers*, 475 U.S. 643, 649 (1986); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("The question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter."). In such cases, the court examines the underlying contract to determine whether the parties agreed to commit the question of arbitrability to the arbitrator. *Rent-A-Center*, 561 U.S. at 70 ("An agreement to arbitrate a gateway issue is simply

an additional antecedent agreement the party seeking arbitration asks the court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

Here, the parties' incorporation of the American Arbitration Association's Employment Dispute Resolution Rules ("AAA Rules") is clear and unmistakable evidence that the parties intended to delegate the determination of arbitrability to the arbitrator. Rodriguez Decl. ¶ 12, Ex. C at p. 1. Rule 6(a) of the AAA's Rules provides that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.")  The courts of this Circuit have found incorporation of these rules to be sufficient evidence that the parties agreed to delegate the determination of the gateway issues to the arbitrator. *JPay, Inc. v. Kobel*, 904 F.3d 923, 936 (11th Cir. 2018) (finding that the incorporation of the AAA Rules was evidence of a "clear and unmistakable intent to delegate questions of arbitrability to the arbitrator"); *accord Spirit Airlines, Inc. v. Maizes*, 899 F.3d 1230 (11th Cir. 2018); *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308 (11th Cir. 2014); *Terminix International Co. v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327 (11th Cir. 2005). Significantly, the United States Supreme Court has recently reiterated the enforceability of delegation clauses, making it clear that a court has no power to decide issues of arbitrability in the face of the parties' agreement to delegate those issues to the arbitrator: "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, ***a court possesses no power to decide the arbitrability issue***." *Schein,* 139 S. Ct. at 525 (emphasis added).

Thus, through this "delegation" clause, the parties clearly and unmistakably provided that the arbitrator would decide the gateway issues. Therefore, any challenges to the enforceability or validity of the Agreement must be submitted to arbitration.

1.     **The Arbitration Agreement Is Valid and Enforceable**

If the Court nevertheless addresses the delegated issues, it should enforce the Agreement. Though federal courts apply state contract law in determining the existence of an agreement to arbitrate, "federal policy *favoring* arbitration, is taken into consideration even in applying ordinary state law." *Caley v. Gulfstream Aerospace Corp.* 428 F. 3d 1359, 1368 (11th Cir. 2005) [emphasis added, citation omitted]. And, in any event, Florida likewise favors arbitration as a matter of public policy. *KFC National Management Co. v. Beauregard*, 739 So. 2d 630 Fla. 5th DCA 1999). If the moving party shows the existence of an agreement, the burden shifts to the party opposing arbitration to demonstrate that the matter should not be arbitrated. *See Gilmer*, 500 U.S. at 26.

To prove the existence of a contract under Florida law, the party seeking to enforce the contract must prove three elements: "'offer, acceptance, consideration and sufficient specification of essential terms.'" *See e.g.*, *Schoendorf v. Toyota of Orlando,* 2009 WL 1075991 (M.D. Fla. Apr.21, 2009) (quoting *St. Joe Corp. v. McIver,* 875 So.2d 375, 381 (Fla. 2004)). Here, each Plaintiff expressly accepted the offer of employment conditioned on the requirement to arbitrate any employment-related dispute, as evidenced by Compere's and Sulaj's signatures acknowledging and accepting the terms contained in the Offer Letters, and Vargas' signature on the Arbitration Agreement itself. This is sufficient to establish Plaintiffs' acceptance of the Arbitration Agreement. *Dorward v. Macy's Inc.,* 2011 WL 2893118, *11 (M.D. Fla. July 20, 2011) (holding that the plaintiff's signature on a new hire acknowledgment form, which referred to a brochure containing the arbitration agreement, was sufficient to show the plaintiff assented to the arbitration agreement and "Plaintiff's alleged ignorance of the contents of [the brochure] ha[d] no bearing on her duty to arbitrate according to its terms"); *Sultanem v. Bright House Networks, L.L.C.,* No. 8:12–cv–1739–T–24, 2012 WL 4711963, *2 (M.D.Fla. Oct.3, 2012)

(holding plaintiff's denial of receipt of actual arbitration agreement not sufficient to create issue of fact as to existence of arbitration agreement where plaintiff signed work orders acknowledging agreement containing arbitration clause). Thus, Plaintiffs assented to be bound by the terms of the Arbitration Agreement.

### 2. Plaintiffs' Claims Are Covered By the Arbitration Agreement.

As above, the gateway issue of whether the Arbitration Agreement covers the claims at issue is delegated to the arbitrator. Rodriguez Decl. ¶ 12, Ex. C at p.1. If the court nevertheless addresses this issue, this requirement is satisfied as well.

In determining whether Plaintiffs' claims are covered by the Agreement, the threshold inquiry is an analysis of the contractual language. "Absent some ambiguity in the agreement… it is the language of the contract that defines the scope of disputes subject to arbitration." *EEOC v. Waffle House*, 534 U.S. 279, 289 (2002). If the parties agree to submit a wide range of claims to arbitration, such an agreement must be enforced. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57-58 (1995).

Here, the Agreement expressly applies to "any and all controversies, disputes or claims arising out of Employee's employment by Nusret Miami, LLC." Rodriguez Decl. ¶ 12, Ex. C at p. 1; *see also id.* ("**All claims or disputes by the parties (and any other person or entities associated with Nusret) will be arbitrated individually**"). The Arbitration Agreement also specifically covers claims under the FLSA:

> Claims subject to arbitration, include, without limitation, claims arising under . . . the Fair Labor Standards Act of 1938, . . . and any other Federal, State or local law, . . ., and any other claims . . . arising out of or related to Employee's performance of services for, and/or the termination of his or her contract with, Nusret.

*Id.* Plaintiffs seek to recover unpaid minimum and overtime wages under the FLSA, as well as a declaratory judgment that Defendants violated the FLSA. Accordingly, the claims asserted in this lawsuit are clearly covered by the parties' Arbitration Agreement and, thus, must be arbitrated.

> 3. **The Arbitration Agreement Requires that Plaintiffs Individually Arbitrate His Claims.**

The Parties have also delegated the enforceability of the collective action waiver to the arbitrator, but if this Court nonetheless considers the issue, the result is the same. Each Plaintiff must individually arbitrate his or her claims. In bold, the Arbitration Agreement specifically requires individual arbitration and prohibits the parties from participating in a class or collective action:

> **All claims or disputes between the parties (and any other persons or entities associated with Nusret) will be arbitrated individually; the parties understand and agree that they will not consolidate their claims with the claims of any other individually or entity; will not seek class or collective action treatment for any claim that they may have; and will not participate in any class or collective action against each other or against any persons or entities associated with each other.**

Rodriguez Decl., Ex. C at pp. 1-2 (emphasis in original). In the last paragraph, immediately above the signature line, the Agreement reiterates the waiver of the right to participate in class or collective relief:

> If at any time the Employee is made a member of a class in any proceeding, he or she will "opt out" at the first opportunity, and should any third party pursue any claims on the Employee's behalf, the Employee must waive his or her rights to any such monetary recovery.

*Id.* at p. 2. This collective action waiver is enforceable. *See Epic Systems*, 138 S. Ct at 1632.

Under Supreme Court precedent and the express terms of the Arbitration Agreement, the Court should enforce the Arbitration Agreement, including the collective action waiver, and strike the collective claims and order Plaintiffs to individually arbitrate their claims.

### 4. Defendants Did Not Waive Their Right to Enforce the Arbitration Agreement.

Like the other issues related to arbitrability, waiver is also delegated to the arbitrator, but if the Court nonetheless addresses it, the result is the same. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25. Plaintiff cannot meet the "heavy burden of proof" to demonstrate waiver. *Stone v. E.F. Hutton & Co., Inc.*, 898 F.2d 1542, 1543 (11th Cir. 1990). Waiver of an arbitration right occurs when both: "(1) the party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate; and (2) this participation results in prejudice to the opposing party." *Spinner v. Credit One Bank, N.A.*, 617CV340ORL37TBS, 2017 WL 6731967, at *2 (M.D. Fla. Dec. 29, 2017). The first prong is met when a party "substantially invokes the litigation machinery prior to demanding arbitration." *Sherrard v. Macy's Sys. & Tech. Inc.*, 724 Fed. Appx. 736, 739 (11th Cir. 2018). To determine prejudice, courts "may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process." *Id.* at 740. "To vindicate this federal policy favoring arbitration, 'waiver is not to be lightly inferred, and will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery.' " *PNC Bank, N.A. v. Presbyterian Ret. Corp.*, Civil Action No. 14-0461-WS-B, 2015 WL 1931395, at *5 (S.D. Ala. Apr. 28, 2015) (quoting *In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109, 117 (3d Cir. 2012) ).

Plaintiff will be unable to demonstrate either prong. First, Defendants have not significantly invoked the litigation machinery prior to demanding arbitration. Nusret Miami filed a partial answer[2] and partial motion to dismiss Plaintiff's third claim for declaratory relief, but it is well settled that a motion to dismiss is not enough to amount to substantial litigation activity.

---

[2] On April 8, 2019, Nusret Miami filed a Motion for Leave to File an Amended Answer to Plaintiff's Complaint. [D.E. 36.]

*Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, No. 614CV1551ORL40GJK, 2015 WL 6869734, at *3 (M.D. Fla. Nov. 9, 2015), *aff'd*, 845 F.3d 1351 (11th Cir. 2017); *see also Cooper v. Asset Acceptance, LLC*, 532 Fed.Appx. 639, 642 (7th Cir. 2013) (unpublished) (affirming district court's determination that defendant "did not waive its right to invoke arbitration," by removing the case to federal court, filing a motion to dismiss, and participating in discovery pending the ruling on the motion to dismiss); *Machado v. Labor Ready Se., Inc.*, CASE NO. 14-24234-CIV-LENARD/GOODMAN, 2015 WL 6829061, at *4 (S.D. Fla. Nov. 6, 2015) (emphasis and citations omitted) (finding "that a mere filing of a motion to dismiss before filing a motion to compel arbitration does not constitute a waiver of [defendant's] contractual arbitration rights"); *Manard v. Knology, Inc.*, No. 4:10-CV-15 (CDL), 2010 WL 2528320, at *4 (M.D. Ga. June 18, 2010) (finding "Defendant did not waive its right to arbitrate," despite previously filing a motion to dismiss and participating in mediation).

The fact that Defendants have engaged in minimal discovery in preparation for opposing Plaintiff's Motion to Certify 216(b) Collective does not change this result. Two weeks after Nusret Miami filed its Partial Motion to Dismiss and before briefing was even complete and the pleadings settled, Plaintiff filed a motion for conditional certification. Forced to defend against Plaintiff's attempt to quickly issue notice to putative plaintiffs (who will almost certainly also be bound to arbitrate their claims), Defendants were left with no choice but to try and gather facts regarding the basis of Plaintiff's claims in order to oppose Plaintiff's Motion, even while they were simultaneously preparing their papers to enforce the agreement to arbitrate. The participation in discovery is not grounds to find a waiver of arbitration, particularly defensive discovery necessitated by Plaintiff's own actions. *See Lupo v. Winghouse of Daytona Beachside, LLC*, Case No.: 8:12-cv-1263-T-35-EAJ, 2013 WL 12161805, at *3 (M.D. Fla. Jan. 25, 2013)

(holding "that [p]laintiff fail[ed] to meet her heavy burden of proving that [d]efendants ha[d] waived their right to arbitrate" where the parties had not "engaged in any substantial discovery" and defendants actions had "been purely defensive"); *cf. Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1277–78 (11th Cir. 2012) (holding that a party substantially engaged in litigation by taking approximately 20 depositions, serving answers to interrogatories, and producing more than 900,000 documents over a one year period).

Finally, even if Plaintiff could demonstrate that Defendants substantially involved the litigation machinery such that they have acted inconsistently with the right to arbitrate, she cannot demonstrate prejudice. In determining whether the other party has been prejudiced, the Court "may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process." *Mason v. Midland Funding LLC*, No. 116CV02867LMMRGV, 2018 WL 3702462, at *21 (N.D. Ga. May 25, 2018). There has been no delay; Defendants bring this motion approximately one month after Nusret Miami filed its responsive pleadings and before the pleadings are settled. As for expenses, Plaintiff can blame only herself for costs incurred at this early date in the litigation. Plaintiff chose to file an early motion for conditional certification in violation of the written Arbitration Agreement; she cannot now object that she incurred costs inconsistent with arbitration as a result of Defendants' attempt to oppose it.

### IV.   CONCLUSION

Plaintiff Compere's Collective Action Complaint and Opt-In Plaintiffs Sulaj's and Vargas' filed Consents to Join this litigation directly violate their promises under the Arbitration Agreement to individually arbitrate the FLSA claims at issue in this litigation. Accordingly, the collective claims should be stricken, and Plaintiffs should be compelled to litigate their claims through individual arbitration, if at all.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(B), counsel for Defendant, Miguel A. Morel, hereby certifies that he conferred with counsel for Plaintiff, Robert Brock, in a good faith effort to resolve the issues raised by this Motion, but was unable to resolve the issues.

**Dated**: April 9, 2019                                        Respectfully submitted,

                                                                                /s/ Jonathan A. Beckerman
                                                                                Jonathan A. Beckerman, Esq.
                                                                                Florida Bar No. 568252
                                                                                E-mail:  jabeckerman@littler.com
                                                                                Miguel A. Morel, Esq.
                                                                                Florida Bar No.: 089163
                                                                                E-mail:  mamorel@littler.com
                                                                                LITTLER MENDELSON, P.C.
                                                                                Wells Fargo Center
                                                                                333 SE 2nd Avenue, Suite 2700
                                                                                Miami, Florida 33131

                                                                                Telephone: (305) 400-7500
                                                                                Facsimile:  (305) 603-2552

                                                                                *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 9th day of April 2019, the foregoing document is being served on this day on all counsel of record, via transmission of Notices of Electronic filing generated by the CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                        By:  /s/ *Miguel A. Morel*
                                                                Miguel A. Morel, Esq.