**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 1:19-cv-20277-KMM

MELISSA COMPERE, on behalf of herself and
all others similarly situated,
    Plaintiff,

v.

NUSRET MIAMI, LLC, d/b/a Nusr-et Steakhouse,
a Florida limited liability company,
NUSRET GOKCE, an individual,
    Defendants.
_____/

## **OMNIBUS ORDER**

THIS CAUSE came before the Court upon named Plaintiff Melissa Compere's ("Plaintiff" or "Compere") Motion to Certify 216(b) Collective Action ("Mot. to Certify") (ECF No. 19) and Defendant Nusret Miami, LLC's Partial Motion to Dismiss ("Mot. to Dismiss") (ECF No. 9). The Parties filed their respective responses and replies.[1] The matter is now ripe for review.

**I.   BACKGROUND**

On January 18, 2019, Plaintiff filed a Collective Action Complaint on behalf of herself and all others similarly situated against Defendants Nusret Miami, LLC ("Nusret Miami") and Nusret Gokce ("Gokce") (collectively, "Defendants") seeking relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. and the Declaratory Judgment Act, 28 U.S.C. § 2201. *See generally* ("Compl.") (ECF No. 1). Plaintiff alleges that she and other front-of-the-house tipped employees were (1) forced to participate in a tip pool or tip-share, in which tips were shared with

---

[1] *See* Defendants' Response in Opposition to Plaintiff's Motion to Certify ("Resp. to Mot. to Certify") (ECF No. 40); Plaintiff's Reply to Defendants' Response ("Reply to Mot. to Certify") (ECF No. 50); Plaintiff's Response to Defendant's Partial Motion to Dismiss ("Resp. to Mot. to Dismiss") (ECF No. 26); Defendant's Reply in Support of its Partial Motion to Dismiss ("Reply to Mot. to Dismiss") (ECF No 34).

non-tipped employees and (2) paid below the minimum and overtime wage for tipped employees. *See generally id.* In Count I, Plaintiff asserts a claim for failure to pay minimum wage in violation of the FLSA. *Id.* at 7–8. In Count II, Plaintiff asserts a claim for failure to pay overtime wages in violation of the FLSA. *Id.* at 8–9. In Count III, Plaintiff requests a declaration that Defendants' acts, policies, practices, and procedures have violated the FLSA. *Id.* at 9–10.

Now, Plaintiff moves to conditionally certify a collective action with the following class definition:

> All front-of-the-house tipped employees who worked at Nusr-et Steakhouse in Miami within the two years preceding this lawsuit and who, as a result of Defendants' policy of requiring Class Members to share tips with non-tipped employees and to work without being paid an hourly wage, earned less than the applicable minimum and/or overtime wage for one or more weeks.

Mot. to Certify at 1–2. Plaintiff also moves this Court to permit Plaintiff to notify potential class members of the pendency of this action and of their right to opt in to this action. *Id.* at 18–19.

Plaintiff and Opt-In Plaintiff Valdo Sulaj ("Sulaj") filed affidavits in support of the Motion to Certify.[2] *See* Affidavit of Melissa Compere ("Compere Aff.") (ECF No. 16); Affidavit of Valdo Sulaj ("Sulaj Aff.") (ECF No. 18). In their affidavits, Compere and Sulaj state that "to the best of [their] knowledge and belief [they] worked with approximately 200 other tipped employees who were subject to the same policies and procedures as [them]." *See* Compere Aff. ¶ 10; Sulaj Aff. ¶ 7. Compere and Sulaj add that "other tipped employees at Nusr-et Steakhouse will want to participate in this lawsuit," but that "many of them are unaware of their rights pertaining to minimum and overtime wages, or in fear of retaliation if they were to exercise their rights in an individual action." Compere Aff. ¶ 11; Sulaj Aff. ¶ 8. In addition to Compere and Sulaj, other

---

[2] Plaintiff also submitted the Affidavit of Opt-In Plaintiff Diego Vargas ("Vargas Affidavit") (ECF No. 17). However, this Court has found that Vargas is bound by a valid arbitration agreement. (ECF No. 65). As such, this Court will not consider the substance of the Vargas Affidavit herein.

employees have opted in to this lawsuit (collectively referred to herein as "Opt-In Plaintiffs"). *See* Notices of Consent to Join (ECF Nos. 39, 44, 54, 56).

Additionally, Defendant Nusret Miami moves to dismiss the declaratory relief claim (Count III) pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally* Mot. to Dismiss. Because the resolution of the Motion to Certify impacts the resolution of the Motion to Dismiss, the Court will first address the Motion to Certify. *See Hart v. JPMorgan Chase Bank, N.A.*, No. 8:12-CV-00470-T-27TBM, 2012 WL 12914660, at *2 (M.D. Fla. June 20, 2012) (denying motion to dismiss to allow the court to first address the plaintiff's motion to certify).

## II.     LEGAL STANDARD

### A.     Certification of 216(b) Collective Action

The FLSA authorizes collective actions against employers for unpaid minimum wage and overtime compensation. 29 U.S.C. § 216(b). Section 216(b) provides that an action "may be maintained . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." *Id.* A plaintiff may bring a collective action on behalf of similarly-situated persons subject to the requirements that prospective plaintiffs file a written consent in the court where the action is brought. *Id.*; *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001). A collective action brought under the FLSA can include only those plaintiffs who affirmatively opt in to the action by filing their consent in writing. 29 U.S.C. § 216(b).

Courts in the Eleventh Circuit generally use a two-tiered procedure for certifying FLSA collective actions. *See Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003) (citation omitted). The first tier—the one at issue in the present Motion to Certify—is referred to as the notice stage. *See id.* (quoting *Hipp*, 252 F.3d at 1218). At this stage, the burden is on the plaintiff to show that there is a "reasonable basis" for the claim that there are

other similarly situated employees who desire to opt in to the case. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259–61 (11th Cir. 2008). The standard by which a court determines whether plaintiffs are similarly situated at this stage has been described as "not particularly stringent," "fairly lenient," "flexible," and "not heavy." *Id.* (citations omitted).

At the second tier, upon a motion for decertification by the defendant, the Court re-examines the question of certification once discovery is complete. *Cameron-Grant*, 347 F.3d at 1243 n.2. Then, the Court determines whether there are similarly situated employees such that the action should proceed to trial as a representative action. *Id.*

### B. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). This requirement "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. When considering a motion to dismiss, the court must accept plaintiff's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir. 2008).

## III. DISCUSSION

### A. Motion to Certify 216(b) Collective Action

To conditionally certify an FLSA collective action, the Court must determine that there are other employees who: (1) are similarly situated with regard to their job requirements and pay provisions, and (2) desire to opt in to the case. *See Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991). The plaintiff bears the "fairly lenient" burden of satisfying these requirements. *See Morgan*, 551 F.3d at 1259–61. And, the decision to create an opt-in collective

action and authorize notice to potential class members "remains soundly within the discretion of the district court." *Hipp*, 252 F.3d at 1219 (citations omitted).

i. Conditional Certification of a Collective Action

Plaintiff argues that certification of a collective action is appropriate because Plaintiff and potential class members are similarly situated. *See* Mot. to Certify at 5–8, 11–14. In response, Defendants argue that Plaintiff and other potential class members are not similarly situated because (1) the "common policy or plan" that Plaintiff alleges binds the class members does not violate the FLSA, and (2) Plaintiff's claims will require numerous individual inquiries to determine whether individual employees engaged in "sufficient non-tip producing side work to invalidate the tip pool." Resp. to Mot. to Certify at 11–18.

a) *Similarly Situated*

Courts commonly consider five factors at the conditional certification stage in determining whether members of a class are similarly situated: (1) whether plaintiffs held the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether plaintiffs were subjected to the same policies and practices, and whether the policies and practices were established in the same manner and by the same decision maker; and (5) the degree to which the actions constituting the claims violations are similar. *See Didoni v. Columbus Rest., LLC*, 327 F.R.D. 475, 480 (S.D. Fla. 2018). No single factor is dispositive. *Roman v. Burger King Corp.*, No. 15-CV-20455-KMM, 2015 WL 12881153, at *2 (S.D. Fla. June 2, 2015).[3]

---

[3] Defendants argue that Compere and Sulaj's "cut-and-paste affidavits . . . are too conclusory and vague." Resp. to Mot. to Certify at 12–13. Although the Affidavits of Compere and Sulaj are very similar, the Court finds, for the reasons set forth herein, that the Affidavits, along with the other record evidence, provide a reasonable basis for Plaintiff's claim that there are other similarly situated front-of-the-house tipped employees.

First, Plaintiff seeks to conditionally certify a collective action of front-of-the-house tipped employees with various job titles. Employees may be similarly situated despite different job titles where they share similar roles and job duties. *See McClean v. On the Half Shell, Inc.*, No. 3:17-CV-1434-J-20MCR, 2018 WL 8578016, at *3 (M.D. Fla. Oct. 24, 2018) (finding employees similarly situated despite different job titles where the defendants acknowledged that the employees contributed to the tip pool and were subject to the same policies); *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1239 (S.D. Ala. 2008) ("If . . . [plaintiffs] are all harmed by the same company pay policies, then it is of no consequence whether their job duties are similar, what kind of work they performed, why they worked off the clock, and the like. What matters is that they did work off the clock, that [defendant] required or permitted them to do so, and that they were not paid statutory overtime . . . .").

Here, Compere and Sulaj's Affidavits indicate that front-of-the-house tipped employees perform similar job duties albeit with different job titles. For example, Compere states that she worked as a drink runner, cocktail server, and restaurant server and that in these roles, she was a member of the service team with regular customer contact. Compere Aff. ¶¶ 1, 5. Compere also explains that "[m]any of the front-of-the-house tipped employee positions . . . are uniquely titled by the particular food or beverage served, such as drink runner, but are members of the service team and have tableside customer contact." *Id.* ¶ 4. Similarly, Sulaj states that he worked as a meat cutter, busser, and food runner, and was similarly a member of the service team, performing various duties as needed. *See* Sulaj Aff. ¶ 1; *see also* Deposition of Sulaj ("Sulaj Dep.") (ECF No. 40–5) at 27:16–28:25; 47:7–11. Notably, both employees' offer letters list each of their position titles as "Runner." *See* Offer Letters (ECF No. 40–2). At this stage of the litigation, this is sufficient to demonstrate that front-of-the-house tipped employees share similar job duties. *See*

*McClean*, 2018 WL 8578016, at *3 (finding servers and bartenders sufficiently similar despite being "trained, compensated, and tipped differently"); *Stuven v. Texas de Brazil (Tampa) Corp.*, No. 8:12-CV-1283-T-24TGW, 2013 WL 610651, at *4 (M.D. Fla. Feb. 19, 2013) ("At this stage of the litigation, what the employee serves—food or beverages—is a minor distinction.").

Second, the potential class members work in the same geographic location. Defendant Nusret Miami is a Florida limited liability company that owns and operates Nusret Steakhouse located in Brickell in Miami, Florida. Compl. ¶ 4. Plaintiff seeks to certify a collective action of employees that worked for Defendants at this location only. *See* Mot. to Certify at 1–2.

Third, the alleged violations occurred during the same time period—the two years preceding the lawsuit. *Id.* at 1–2. Compere's employment with Defendants ran from September 2017 to November 2018. Compere Aff. ¶ 1. Sulaj's employment ran from approximately October 2017 to May 2018. Sulaj Aff. ¶ 1. Although Plaintiff has not provided dates of employment for the additional Opt-In Plaintiffs, Plaintiff has demonstrated that her claims likely cover the same period of alleged violations of other members of the collective action.

Fourth, Compere, Sulaj, and the additional Opt-In Plaintiffs allege that they were subjected to the same policies and practices, which were established by the same decision maker. *See* Compere Aff. ¶ 10; Sulaj Aff. ¶ 7; *see also* Notices of Consent to Join. Specifically, Compere and Sulaj contend that they participated in a tip pool in which tips were shared with non-tipped employees and, as a result, they were not paid minimum or overtime wages. *See generally* Compl.; *see also* Compere Aff. ¶¶ 6–9; Sulaj Aff. ¶¶ 3–6. Defendants do not dispute that front-of-the-house tipped employees were subject to the same compensation scheme during the two years

7

preceding this lawsuit.[4]  *See* Resp. to Mot. to Certify 6–8; 11–15.  Instead, Defendants assert that their compensation policies and practices comply with the FLSA.  *Id.* at 11–15.  However, this goes to the merits of the claims at issue and is thus premature at this stage of the proceedings.  *See McClean*, 2018 WL 8578016, at *3 ("[Defendant]'s response consists largely of . . . merits-based arguments—all of which are irrelevant to the certification question.").  Further, collective actions do not require a showing at the notice stage that there is a "unified, explicit scheme of FLSA violations," as Plaintiff need only show that the potential plaintiffs "are similarly situated with respect to general workplace policies and practices."  *Alequin v. Darden Rests., Inc.*, No. 12-61742-CIV, 2013 WL 3939373, at *6 (S.D. Fla. July 12, 2013).

Finally, the actions constituting the claimed violations appear to be similar.  Here, Compere and Sulaj state that they were forced to share tips with non-tipped employees and that Defendants did not pay front-of-the-house tipped employees (1) a regular hourly rate, (2) the minimum wage, and (3) any overtime owed to them.  *See generally* Compl.; *see also* Compere Aff. ¶¶ 6–9; Sulaj Aff. ¶¶ 3–6.  Specifically, Compere states that she "participated in a tip pool in which tips were shared with non-tipped employees, such as polishers, restockers, and coffee makers."  Compere

---

[4] Notably, the job titles that Compere and Sulaj held are each considered front-of-the-house tipped employee positions.  According to Nusret Miami's Tip Pool Acknowledgment form, which outlined the tip pool arrangement in effect from November 2017 through April 29, 2018, servers, bussers, and food runners were among the job positions that participated in the tip pool.  *See* Declaration of Yusuf Hanlioglu ("Hanlioglu Decl.") (ECF No. 40–3) ¶ 6, Ex. A.  According to the Service Charge & Tip Pool Distribution Acknowledgment form, which sets forth the tip pool arrangement effective April 30, 2018, servers, cocktail servers, food runners, bussers, and drink runners are among the job positions that participate in the tip pool.  Hanlioglu Decl. ¶ 6, Ex. B.  Although not all of the job descriptions listed on both policies are the same, Defendants state that "[t]hough the job descriptions and percentage distribution changed somewhat [in April 2018], [both policies]  . . . appl[y] to the same group of front-of-the-house tipped employees who customarily and regularly receive tips."  Resp. to Mot. to Certify at 7–8.  This demonstrates that the proposed collective action of front-of-the-house tipped employees would include employees subject to the same policies and practices, established by the same decision maker.

Aff. ¶ 6. She also states that she "regularly worked more than forty hours per week," "was paid below the minimum wage," and "[f]or the majority of [her] employment, [she] was paid no hourly wage at all." *Id.* ¶¶ 7–9. Similarly, Sulaj states that he "participated in a tip pool in which tips were shared with non-tipped employees, such as polishers and coffee makers" and was similarly not paid minimum wage and overtime pay. Sulaj Aff. ¶¶ 3–6. Further, each of the Opt-In Plaintiffs attest that they are similarly situated to Compere. *See* Notices of Consent to Join.

Defendants point to deposition testimony of Compere and Sulaj to argue that each of the statements in their respective affidavits that they shared tips with non-tipped employees, such as polishers, restockers, and coffee makers, "are not credible." *See* Resp. to Mot. to Certify at 3–5, 12–15. Defendants also rely on the affidavits of management-level employees to argue that there were no positions titled "polisher" and "restocker." *See id.* at 12–15; *see also* Hanlioglu Decl. Plaintiff rebuts Defendants' contentions by providing floor plans listing "stocker" and "polish" as job titles or duties for a particular shift. *See* Reply to Mot. to Certify at 4–5, Ex. A (ECF No. 50–1). Further, whether employees with certain job titles improperly shared in the tip credit goes to the merit of Plaintiff's claim and is not properly before the Court at this stage. *See Brock v. 50 Eggs, Inc.*, No. 16-20294-CIV-LENARD/GOODMAN, 2016 WL 10933025, at *2 (S.D. Fla. Oct. 11, 2016) ("Although Defendant argues that it did not permit its kitchen staff to participate in its tip pool . . . this goes to the merits of Plaintiff's claims, not to whether he has established a reasonable basis for determining that there are other similarly situated employees."); *Longcrier*, 595 F. Supp. 2d at 1238 ("[F]actual disputes . . . do not constitute a valid basis for denying conditional class certification.").[5]

---

[5] Defendants argue that collective treatment will require numerous individual inquiries "to the extent Plaintiff contends the tip pool is unlawful because tipped or commissioned employees performed non-tip producing work more than 20% of the time." Resp. to Mot. to Certify at 15.

9

Upon weighing these factors, the Court finds that Plaintiff has met her burden in showing that there is a reasonable basis to support her claim that there are other similarly situated employees.

b)   *Desire to Opt In*

Plaintiff argues that other similarly situated employees will opt in to this action. Mot. to Certify at 13–14. In response, Defendants argue that Plaintiff has not demonstrated that there is sufficient interest of others to join the lawsuit. Resp. to Mot. to Certify at 19–20.

The Court finds that the Affidavits of Compere and Sulaj support the conclusion that other similarly situated employees will opt in to this action. *Guerra v. Big Johnson Concrete Pumping, Inc.*, No. 05-14237-CIV, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006) (granting motion for conditional certification of FLSA collective action where Plaintiff submitted an affidavit of the named plaintiff and one opt-in plaintiff). In addition to Compere and Sulaj, five other individuals have filed Notices of Consent to Join, and Compere and Sulaj state in their Affidavits that they believe there are approximately "200 other tipped employees who were subject to the same policies and procedures" and that they each have "personal knowledge that other tipped employees . . . will want to participate in this lawsuit." Compere Aff. ¶ 10; Sulaj Aff. ¶¶ 7–9. It is therefore reasonable to expect that others will desire to opt in as well. *See Didoni*, 327 F.R.D. at 480 (finding that affidavits in which plaintiffs "attest to personal knowledge of 30 to 40 individuals who 'will want

---

Specifically, Defendants argue that variations in side work that tipped employees complete during a given shift renders the claims inappropriate for collective treatment. *See id.* at 15–18. Although Compere and Sulaj's deposition testimony may raise manageability concerns, these issues are more appropriately addressed at the decertification stage, when the Parties have engaged in more extensive discovery. *See Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330, 1336 (M.D. Fla. 2007) ("Although the Court has concerns regarding the manageability of the proposed class . . . these issues are more appropriately addressed at the decertification stage when additional information is available regarding the characteristics of the class.") (citation omitted).

to participate in this lawsuit'" sufficient to find others are likely to opt in) (internal citation omitted).  Accordingly, the Court finds that Plaintiff has met her burden in demonstrating that there are other similarly situated employees who desire to opt in to this action.

    ii.   Notice to Class Members

The Parties agree to meet and confer about the production of contact information for potential class members, the terms of an accurate and appropriate notice, and the logistics for providing notice and filing consents.  Resp. to Mot. to Certify at 20; Reply to Mot. to Certify at 7.  Accordingly, the Parties are instructed to meet and confer on the appropriate form of notice to be provided to similarly situated front-of-the-house tipped employees.  *See Didoni*, 327 F.R.D. at 481.  The Parties shall also discuss the appropriate notice protocol, including Plaintiff's request that the Court (1) require Defendants to post notice in Nusret Steakhouse and (2) provide Plaintiff with the names, last-known physical addresses, and email addresses of class members.  Mot. to Certify at 18–19; s*ee Didoni*, 327 F.R.D. at 481.  In doing so, the Parties shall also consider the list of individuals to be noticed in light of Defendants' contention that many employees have signed arbitration agreements and thus should not receive notice of this action.  *See* Resp. to Mot. to Certify at 9–11 (citing *In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019), in which the Fifth Circuit held that direct notice may not be sent to an entire class when certain class members had signed valid arbitration agreements); *see also McGuire v. Intelident Sols., LLC*, 385 F. Supp. 3d 1261, 1265–66 (M.D. Fla. 2019).  The Parties shall file their proposed joint notice and notice protocol on or before September 23, 2019.  Upon approval of the form notice and notice plan, Defendants will be required to produce contact information for potential class members.[6]

---

[6] To date, Defendants have only produced an arbitration agreement signed by one Opt-In Plaintiff. Therefore, the Court may find it appropriate to authorize notice to potential plaintiffs for whom Defendants have not yet produced executed arbitration agreements. *See Camp v. Bimbo Bakeries*

### B. Motion to Dismiss Count III

Defendant Nusret Miami moves to dismiss the Declaratory Judgment claim (Count III) because Plaintiff is not a current employee. *See* Mot. to Dismiss. In response, Plaintiff argues that dismissal is not warranted because the Complaint is brought on behalf of herself and other similarly-situated employees. *See* Resp. to Mot. to Dismiss at 2–3.

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "[A] district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment." *Gentry v. Harborage Cottages-Stuart, LLLP*, No. 08-14020-CIV, 2008 WL 1803637, at *4 (S.D. Fla. Apr. 21, 2008) (citation omitted). Declaratory relief is only appropriate where there is a threat of imminent future harm. *Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006). Generally, a claim for declaratory relief by a former employee for violations of the FLSA is subject to dismissal. *Hart*, 2012 WL 12914660, at *2 ("Plaintiff is no longer an employee of Defendant and, therefore, the claim for declaratory relief will become moot absent certification of this case as a collective action.") (citation omitted). However, where the plaintiff asserts a declaratory relief claim on behalf of a collective action, there is no "absence of a 'present right,'" because relief "would impact any current employees who choose to opt-in." *Snyder v. Glen Lakes P'ship, Ltd.*, No. 8:11-CV-845-T-30EAJ, 2011 WL 2881843, at *1 (M.D. Fla. July 19, 2011).

---

*USA, Inc.*, No. 18-CV-378-SM, 2019 WL 1472586, at *3 (D.N.H. Apr. 3, 2019) (finding notice to potential class members appropriate even where defendant argued that certain employees were subject to arbitration agreements because defendant had not produced an executed arbitration agreement signed by a potential class member).

Here, although Compere is a former employee, she has moved for conditional certification of a collective action that includes both current and former employees. *See* Mot. to Certify at 1–2. Because the Court finds that conditional certification of a collective action is appropriate at this stage, a declaration that Defendants' policies and procedures violate the FLSA would impact any current employees who opt in to this case. Thus, Defendant's Motion to Dismiss the Declaratory Judgment Claim (Count III) is DENIED WITHOUT PREJUDICE.[7]

## IV.  CONCLUSION

UPON CONSIDERATION of the Motions, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Plaintiff's Motion to Certify (ECF No. 19) is GRANTED and Defendant Nusret Miami's Partial Motion to Dismiss (ECF No. 9) is DENIED WITHOUT PREJUDICE. It is further ORDERED AND ADJUDGED that the Parties shall meet and confer on the appropriate notice to be provided to potential class members. The Parties are INSTRUCTED to file a proposed joint notice and notice plan on or before September 23, 2019, which shall not exceed fifteen (15) pages.

DONE AND ORDERED in Chambers at Miami, Florida, this  21st  day of August, 2019.

K. MICHAEL MOORE
UNITED STATES CHIEF DISTRICT JUDGE

c:   All counsel of record

---

[7] If the collective action is decertified at the decertification stage, the Court will then consider dismissing the Declaratory Judgment claim. *Snyder*, 2011 WL 2881843, at *1; *see also Hart*, 2012 WL 12914660, at *2 ("Rather tha[n] dismiss the claim for declaratory relief at this time, however, the Court will address the propriety of [the declaratory relief claim] after the issue of collective action certification is resolved.").