**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:19-CV-20277-AHS**

MELISSA COMPERE,

        Plaintiff,

vs.

NUSRET MIAMI, LLC d/b/a
NUSR-ET STEAKHOUSE
and NUSRET GOKCE,

        Defendants.

_____/

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR FINAL SUMMARY JUDGMENT ON**
**PLAINTIFF'S CLAIM AND FOR SUMMARY JUDGMENT ON THE OPT-IN**
**PLAINTIFFS' CLAIMS OR ALTERNATIVELY, TO DECERTIFY THE CLASS**

**Dated**: April 20, 2020

Respectfully Submitted,

Jonathan A. Beckerman, Esq.
Florida Bar No. 568252
Jonathan.Beckerman@lewisbrisbois.com
Miguel A. Morel, Esq.
Florida Bar No.: 089163
Miguel.Morel@lewisbrisbois.com
**Lewis Brisbois Bisgaard & Smith LLP**
110 SE 6th Street, Suite 2600
Fort Lauderdale, Florida 33301
Telephone: 954-728-1280
Facsimile: 954-728-1282

*Attorneys for Defendants*

Defendants Nusret Miami, LLC d/b/a Nusret Steakhouse ("Nusret Miami" or the "Restaurant") and Nusret Gökçe ("Chef Gökçe") (collectively "Defendants"), pursuant to Federal of Civil Procedure 12(h) and 56, and Local Rule 56.1, respectfully move for dismissal or entry of final summary judgment as to the claim pled by Plaintiff Melissa Compere ("Plaintiff" or "Compere") on behalf of herself and others alleged to be similarly-situated. Alternatively, Defendants move to decertify the class. In support of their Motion, Defendants submit the following Memorandum of Law.[1]

## I.    PRELIMINARY STATEMENT

Plaintiff Melissa Compere, and the opt-in plaintiffs, are various service staff who worked at the Nusr-Et Steakhouse, an upscale restaurant in Miami, which opened its doors to the public in mid-November 2017. Plaintiff Compere worked as a Runner and a Server at the Miami Nusr-Et Steakhouse from the opening of the Restaurant until her termination in November of 2018. Compere, who earned over $100,000 during the year she worked at the Restaurant, filed the instant lawsuit against Nusret Miami and Chef Gökçe for alleged violations under the Fair Labor Standards Act (FLSA), 29 U.S.C. §201 *et seq*. Compere, who brought this action as a collective action on behalf of others alleged to be similarly situated, alleges that Defendants failed to pay her minimum wages and overtime wages under the FLSA. *See gen*, D.E. 1 ("Compl").

In *Count I* of the Complaint, Compere alleges that Defendants violated the minimum wage provisions of the FLSA by paying her below the applicable federal minimum wage and by requiring her to share her tips with non-service employees. *See*, D.E. 1 ("Compl.") at ¶¶40-46. Notwithstanding that there is no evidence that non-service employees were permitted to participate in the tip pool, Plaintiff's claim that Defendants violated the FLSA's minimum wage provisions, including its tip-credit provisions lacks merit. First, Nusret did not take a tip-credit to meet its minimum wage obligations. Second, Nusret imposed a mandatory 18% service charge on the bills of customers, which was collected and distributed to its service staff, including Plaintiff on a pro-rata basis. As admitted by Plaintiff during her deposition, the service charge was mandatory and was rarely, if ever, removed from a guest check. The service charges are commissions, which when factored into Plaintiff's regular rate calculation, caused Plaintiff's regular rate to exceed the federal minimum wage by very large amounts. Accordingly,

---

[1] Defendants' Concise Statement of Undisputed Material Facts ("SOF") is being filed contemporaneously with this Motion for Summary Judgment. References to the SOF will be cited as SOF ¶__.

Defendants are entitled to summary judgment on Plaintiff and the opt-in Plaintiffs' claims for FLSA minimum wages violations.

In **Count II**, Compere, alleges that Defendants violated the overtime provisions of the FLSA by failing to compensate her at the rate of one-and-one-half times her regular hourly rate for hours over forty per week. *See* Compl., ¶¶47-53 (Count II).[2] Defendants are also entitled to summary judgment as to this count. The undisputed evidence demonstrates that Plaintiff and the opt-in Plaintiffs were exempt, as a matter of law, from the overtime requirements of the FLSA pursuant to Section 207(i), which exempts from the overtime requirement any employee of a retail or service establishment if: (1) the employee's regular rate is more than one and one-half times the minimum hourly rate and, (2) more than half of the employee's compensation is from commissions. 29 U.S.C. § 207(i). As will be demonstrated below, Plaintiff and the opt-in Plaintiff's regular rate during various representative time periods was always more than one and a one-half times the minimum hourly rate, and more than half of their compensation came from the mandatory 18% service charges, which are commissions under the law.

## II.   OVERVIEW OF THE UNDISPUTED MATERIAL FACTS

### A.  Nusret Miami Opens in Miami In November 2017.

Nusret Miami operates Nusr-Et Steakhouse Miami, an upscale, high volume restaurant offering steakhouse-type cuisine in Miami, Florida, which caters to guests from all over the world. [SOF ¶ 1]. Nusret Miami officially opened its doors to the public in mid-November 2017. [SOF ¶ 2]. Plaintiff Compere and several of the opt-in Plaintiffs were front of the house service employees. Compere, along with several of the opt-in Plaintiffs, was hired and trained on Nusret's policies and procedures approximately a month before the restaurant opened to the general public. [SOF ¶ 3].

### B.  The 18% Service Charge Imposed on Customer's Bills.

Since its opening, Nusret Miami included a mandatory 18% service charge equal to 18% of the total sales price on the bills of customers. [SOF ¶ 5].  At all times, the menu at Nusret Miami informed restaurant guests that a "18% service charge will be added to [the guest's] final bill and will be distributed to the entire team." [SOF ¶ 6]. To date, the language contained in

---

[2] In **Count III**, Compere seeks a declaration of rights pursuant to 28 U.S.C. §1331. Compl. ¶¶54-59 (Count III). Defendants are likewise entitled to summary judgment as to this Count based on the arguments

Nusret Miami's menus regarding the mandatory service charge has not changed. *Id*. The 18% charge was mandatory and could not be negotiated and/or changed by a customer. [SOF ¶ 7].

There were very few rare occasions when the service charge was taken off a guest bill for issues pertaining to service, but never by a guest or a customer. [SOF ¶ 7]. If taken off the bill, it was done so by the direction of management. *Id*.  Plaintiff Compere and the opt-in Plaintiffs had no personal knowledge of the service charge being ever taken off one of their bills, and they consistently testified that this may have occurred perhaps once or twice during the relevant time period. *Id*. (citing Burgos Dep. 58:21-24 ("Q. You don't have personal knowledge of the automatic charges ever being removed or changed off of a guest bill, correct? A. No, I never saw that happen on any bill."); Castilla Dep. 27:1-4 ("Q. During the time you worked at Nusret Miami, did any guests you served have the 18% removed from their bill? A. Not with me, no."); Aldana Dep. 48:11-15 ("Q. Do you have any personal knowledge of that happening at any point during your employment at the restaurant . . .. A. I'm not sure.")).

The final guest bill presented to customers contained a separate line where customers could include a discretionary monetary amount to be charged to their credit card as a tip, exclusive of the 18% service charge included in the final bill. Customers were also able to leave cash tips at their discretion. [SOF ¶ 9]. The amounts collected from the service charge were distributed in their entirety to service employees on a pro-rata basis, except for a 2.65% of service charges when customer guest bills were paid by credit card to account for credit card processing fees. [*Id*. ¶¶ 10-11]. Similarly, the amounts collected from cash and credit card tips collected from customers were also distributed in their entirety to service employees on a pro-rata basis, except for a 2.65% of tips left on credit cards for credit card processing fees. *Id*.

### C.  During the First Five Months Plaintiff and the opt-in Plaintiffs Were Paid an Hourly Rate in Addition to their Pro Rata Share of The Mandatory 18% Service Charge, and Their Pro Rata Share of Discretionary Tips.

The undisputed facts establish that from November 2017 through the end of April 2018, Plaintiff, and the opt-in plaintiffs who worked for Nusret Miami during that time frame, were paid an "hourly wage" and the portion of a mandatory 18% service charge that was imposed on the bills of restaurant patrons. [SOF ¶ 13]. At no time, did they receive a regular rate below the federal minimum wage. [SOF ¶¶38-40]. To the contrary, their regular rate exceeded the applicable minimum wage by large amounts. In fact, Plaintiff's hourly wage for various representative periods ranged from **$23.97 - $50.77** per hour. *See* SOF ¶¶38-40.

Separate from these wages, these employees also received tips that customers voluntarily and gratuitously paid, which were excluded from the regular rate computation. [SOF ¶9]. These discretionary tips were distributed to the service staff on a pro rata basis -- which depended on the number of hours they worked, their individual positions, and their shifts. All discretionary tips were distributed to the service staff, except that Nusret retained 2.65% of credit card tips for the processing of credit card fees. [SOF ¶¶ 10-11]. Only members of the service staff (and no members of management) participated in the tip-distribution pool. [SOF ¶12].

### D. After April 30, 2018 Plaintiff and Several of the opt-in Plaintiffs Were Paid Exclusively A Pro Rata Share of The Mandatory 18% Service Charge and Continued to Receive Their Pro Rata Share of Discretionary Tips.

Beginning on April 30, 2018, Nusret changed its compensation structure to eliminate the hourly wage component of the compensation received by service employees, with the exception of the hostesses, and eliminate overtime payments. [SOF ¶18]. Prior to eliminating the hourly and overtime components, Nusret consulted with HR on Demand, and its principal, Jorge Rivero. [SOF ¶21]. Mr. Rivero is a former Director of the Department of Labor, Wage & Hour Division, to ensure the new pay structure continued to comply with the requirements of the FLSA. [Soyturk Dep. 9:3-8]. Employees were informed of the change to the pay structure during a meeting on or April 30, 2018.  [SOF ¶19]. Mr. Rivero and representatives of his firm attended the meeting and assisted Nusret in explaining to its employees the inner workings of the Section 7(i) exemption. [SOF ¶19, 21]. Nusret, together with Mr. Rivero and his firm, stayed and answered employees' questions pertaining to the exemption and new structure.

Despite the change its compensation structure, Nusret continued to pay its service employees their portion of the mandatory 18% service charge. [SOF ¶20]. The Service Charge continued to be compulsory as it had been prior to April 30. *Id*. In fact, Plaintiff Compere testified that before and after this period, the automatic 18% charge "whether labeled a gratuity or service charge) was always mandatory. [SOF ¶20 citing Compere Dep. 123:6-9 ("[W]e were told that the service charge was mandatory as if it was an item that a person ordered it, it had to be on the check."); Compere Dep. 124:1-4 ("Q. You mentioned there was that there was an 18% gratuity until the end of April 2018, and then it said 18% service? A. Correct Q. Was there a different as far as the customers. A. No. It was supposed to be mandatory for every check.")].

Although they no longer received a base hourly rate, at all times during the relevant period, Plaintiff Compere and the opt-in Plaintiffs always received wages that exceeded more than 1.5 times the federal minimum wage. [SOF ¶¶38-40]. In addition, more than 50% of their total monthly earnings consisted of their portion of the automatic service charges collected and distributed by Nusret. *Id*. Indeed, there were periods during which these employees earned more after the elimination of the hourly rate and Plaintiff and the opt-in Plaintiffs earned very high annual wages while working for Nusret. *Id*. By way of example, Plaintiff Compere reported gross income of over $100,000 for the year 2018. *Id*. at Soyturk Decl., Ex. 2.

### E. Service Charges Were Wages and Nusret Met Its Federal Payroll Tax Responsibilities Under FICA Based on Wages Paid to These Employees Via The Mandatory Service Charges

Nusret treated the service charges distributed to the service employees as wages and met is federal payroll tax responsibilities based on these wages. [SOF at Ex. A at ¶13]. Specifically, Nusret made all applicable withholdings from Plaintiff and the opt-in Plaintiffs' compensation (inclusive of the service charges) and paid its contribution for Plaintiff and the opt-in Plaintiffs' Social Security and Medicare taxes based upon these wages under the Federal Insurance Contributions Act (FICA). [*Id*.; *see also*, pay records attached as Exhibits 2-15 to Soyturk Decl.]. Plaintiff and the opt-in Plaintiffs likewise reported the service charges as wages for federal income tax reporting purposes. *Id*. In addition, many of the opt-in Plaintiffs solicited employment income verification forms from Nusret, which was specifically based on the wages these employees received as service charge commissions to obtain loans from governmental agencies for the purchases of homes and the like. At no time prior to the filing of Compere's lawsuit, did Compere or the opt-in Plaintiffs complain that their service charges were discretionary tips.

## III.   THE SUMMARY JUDGMENT STANDARD.

Under Federal Rule of Civil Procedure section 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of material fact is genuine where the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party." *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993)). "[A] district court must grant summary judgment against a party who fails to establish the existence of an element

essential to his case that he bears the burden of proof on during trial." *Kaplan v. Code Blue Billing & Consulting, Inc.*, No. 11-81049, 2012 U.S. Dist. LEXIS 185696, at \*5 (S.D. Fla. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"The moving party bears the initial burden of demonstrating to the court that the record does not contain any genuine issues of material fact to be determined at trial." *Id.* "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citation and quotations omitted). "In addition, the dispute must have a 'real basis in the record' in order to constitute a genuine dispute of fact. *Kaplan*, 2012 U.S. Dist. LEXIS 185696 at \*6 (quoting *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002) (internal quotations and citation omitted)). Thus, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005).

## IV.   LEGAL ANALYSIS

### A.   PLAINTIFFS' MINIMUM WAGE CLAIMS UNDER THE FLSA FAIL AS A MATTER OF LAW AS THEIR REGULAR RATE OF PAY *AT ALL TIMES* EXCEEDED THE FEDERAL MINIMUM WAGE.

It is well-settled that the regular rate of pay under the FLSA is determined by dividing the total compensation received by the total number of hours worked. *See* 29 C.F.R.   § 778.118; *Overnight Motor Co.   v.   Missel*, 316 U.S. 572 (1942). It is also well-settled that commissions in the form of compulsory service charges are compensations, which can be included in calculating the regular rate calculation. Service charges are commissions that must be included in calculating the regular rate of pay. Where "service charges" are distributed to employees, such payments "may be used in their entirety to satisfy the monetary requirements" of the federal minimum wage law. *See Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1316 (S.D. Fla. 2007) ("Relying on 29 C.F.R. § 531.52 and § *531.55(a)*, the Department of Labor has proclaimed that even service charges in the form of imposed gratuity do not count as tips.") (citing U. S. Department of Labor, Wage and Hour Division Opinion Letter, No. FLSA2005-31, 2005 WL 3308602 (September 2, 2005)); *Mechmet, supra*, 825 F.2d at 1177 ("The waiters are not underpaid. The record suggests that the hourly pay of the plaintiffs, including 'commissions,'

never fell below $14 and sometimes exceeded $18. These amounts are three to four . . .  times the minimum wage.").

Defendants compensated Plaintiff at a regular rate of pay well above the applicable statutory minimums at all times during their employment. An employee's "regular rate" is "the hourly rate actually paid [to] the employee for the normal, non-overtime workweek for which he is employed" and "by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments." 29 C.F.R. § 779.419(b) (citing *Walling v. Youngerman-Reynolds Hardwood Co*., 325 U.S. 419 (1945)). Moreover, an employee's regular rate of pay is not necessarily a uniform amount and may fluctuate from workweek to workweek. *Walling  v Wall Wire Products Co*., 161 F.2d 470 (6th Cir. 1947), *cert denied*, 331 US 828 (1947). ("It may be subject to fluctuation because of different component factors such as … size of dividends upon which they may be dependent or upon profits which are variable factors"); 29 C.F.R. §§ 778.107-108.

### 1. Plaintiffs' Regular Rates Doubled, and almost Tripled, and The Applicable Minimum Wage During the Relevant Time Period.

While Plaintiff and some of the opt-in Plaintiffs contend that Defendants did not pay them minimum wages in excess of the federal minimum wages applicable during the relevant time period (*i.e.*, $7.25 in 2017, 2018, & 2019), plaintiffs are basing their claims on erroneous calculations. Specifically, Plaintiff is not counting their apportionment of the 18% mandatory service charges they received as part of their regular rate calculations and, thus, Plaintiffs are not including all compensation received. The undisputed record evidence demonstrates that when these service charges are included in the regular rate calculation, Defendants are no doubt entitled to summary judgment as Plaintiff and the opt-in Plaintiffs regular rate exceed the applicable federal minimum wage ($7.25) during the relevant time period.

The regular rate of Plaintiff and of the opt-in plaintiffs, varied weekly, but never fell below the statutory federal minimum wage of $7.25 per hour. In fact, the named Plaintiff's hourly average regular rate three times the statutory minimum wage on several occasions. *See* SOF ¶38(a) (Compere). A similar result occurs when the service charge is included in the regular rate calculations of the remaining opt-in Plaintiffs during the relevant time period. In fact, some of these plaintiffs made as much as $50.77 per hour during the relevant time periods, which more than triples the governing federal minimum wage. *See* SOF ¶38(e) (Sulaj).

Further, although Nusret Miami revised its compensation structure at the end of April 2018 to exclude an hourly rate, Plaintiff and the opt-in Plaintiffs' regular rate of pay **never** fell below the statutory minimum wage -- even without the inclusion of the of the hourly wage and overtime premiums previously paid to these employees was eliminated. All told, Plaintiff and the opt-in plaintiffs who worked for Nusret from November 2017 through January 2019, **never** fell below the applicable minimum wage. Accordingly, this Court should grant Defendants' motion and dismiss Plaintiffs' minimum wage claims with prejudice. Because Plaintiffs base their purported claims entirely upon an erroneous regular rate calculation, the Court should grant summary judgment in Defendants' favor as to Plaintiff's minimum wage claims.

## 2. Defendants' Are Not Claiming A Tip Credit and The Service Charges Were Not Discretionary Tips.

Defendants anticipate Plaintiff will argue that the service charges are tips and, therefore, cannot be used to satisfy minimum wage requirements. This argument, however, ignores the undisputed facts and finds no legal support. As recently noted in *Pellon v. Bus. Representation Int'l, Inc*., "[t]ips are clearly defined by the Department of Labor." 528 F. Supp. 2d 1306, 1315 (S.D. Fla. 2007) aff'd 2008 U.S. App. LEXIS 19077 (11th Cir. 2008). The Department of Labor defines a tip as:

> a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be **distinguished from payment of a charge,** if any, **made for the service.** Whether a tip is to be given, and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity . . . **Only tips actually received by an employee as money belonging to him which he may use as he chooses free of any control by the employer, may be counted** in determining whether he is a "tipped employee" within the meaning of the Act . . ..

*Id.* (quoting 29 C.F.R. § 531.52) (emphasis added). However, because Defendants **_are not_** claiming a tip credit and the service charges are not tips, all service charge distributions Plaintiff received must be included in her regular rate determination.

## 3. The Undisputed Record Evidenced Demonstrates That Customers Have Zero Control in Determining Who Gets the Service Charge.

Here, Nusret Miami's guests did not pay the service charges directly to Plaintiff's or the opt-in Plaintiffs, nor did restaurant customers have a right to dictate who was going to going to receive a service charge. *See* SOF ¶ 7. The customers paid the mandatory 18% service charge to

Nusret Miami, after being serviced by the restaurant's service staff. (*Id*.) Thus, the service charges are mandatory, and the customer ***does not*** determine the amount. *See United States v. Conforte*, 624 F.2d 869, 874 (9th Cir. 1980) (observing that an "essential element" of a tip is that it is a "voluntary payment in an amount, and to a person, designated by the customer"); *United States v. Indianapolis Athletic Club, Inc*., 818 F. Supp. 1250, 1253 (S.D. Ind. 1993) ("The discretion to refuse payment is an essential element of a tip or gratuity."). Thus, the service charges are not tips and must be included in the named Plaintiff and the opt-in Plaintiffs' total compensation for calculating the Plaintiff and the opt-in Plaintiffs' regular rates.

Eleventh Circuit has held that summary judgment is appropriate where, as here, an employer produces the employee's relevant time and pay records as well as an affidavit stating that employee was properly compensated, and the employee neither challenges the validity of those records nor produces any evidence indicating that the records are deficient. *Arroyave v. Rossi*, 2008 U.S. App. LEXIS 22270 (11th Cir. 2008). Plaintiff has offered no facts to support her allegation that Defendants violated the FLSA's overtime and minimum wage requirements. Accordingly, because the undisputed facts establish that Plaintiff's regular rate of pay exceeded the applicable statutory minimum at all times, this Court should enter summary judgment in Defendants' favor and dismiss Plaintiff's minimum wage claims.

### B. DEFENDANTS' OVERTIME CLAIMS FAIL UNDER THE FLSA AS PLAINTIFFS' ARE EXEMPT FROM THE FLSA'S OVERTIME REQUIREMENTS PURSUANT TO 28 U.S.C. §207(A)(1).

Plaintiffs' entire case is based on their incorrect allegation that they were not paid minimum wage and overtime as required under the FLSA. The FLSA requires an employer to pay its employees the minimum wage for all hours up to 40 in a workweek, and at a rate not less than 1.5 times the regular rate of pay for any hours exceeding 40 in a workweek. 29 U.S.C. §§ 206(a)(1), 207(a)(1). That said, the FLSA provides for certain exemptions from these requirements, and such exemptions should be given "**a fair (rather than a 'narrow') interpretation**." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) (citation omitted) (emphasis supplied).

### 1. The Section 7(i) Exemption and Its Requirements Have Been Met.

The 7(i) exemption, provides: No employer shall be deemed to have violated subsection (a) by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in

excess of one and one-half times the minimum hourly rate applicable to him/her under § 6 of the FLSA and (2) more than half of his/her compensation for a representative period (not less than one month) represent commissions on goods or services. 29 U.S.C. § 207(i).  Congress intended the 7(i) exemption "to ensure that workers who are paid on a commission basis are guaranteed to receive at least the legislated minimum wage without requiring them to work overtime for it." *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1256 (11th Cir. 2001).

To avail itself of the 7(i) exemption, Defendants must show that: (1) Nusret is a retail or service establishment; (2) Plaintiffs' "regular rate of pay" exceeds 1.5 times the applicable minimum wage, and (3) more than half of Plaintiffs' compensation for the applicable representative period consists of commissions on goods or services. *Accord Nacembeni v. Quayside Place Partners, LLP,* 2010 U.S. Dist. LEXIS 58707 (S.D. Fla. June 11, 2010); 29 U.S.C. § 207(i). As shown below, Defendants have met their burden.

### 2.   There Can Be No Dispute That Miami Nusr-Et Steakhouse is a Service establishment and that Plaintiffs' regular rate of pay exceeded 1.5 times the minimum hourly rate in all weeks in which they worked overtime.

There is no dispute that Nusret is service establishment. The federal regulations define "retail or service establishment" as an establishment in which 75% of its dollar volume of sales of goods or services (or both) is not for resale and is recognized as retail sales or services in the particular industry. 29 C.F.R. §§ 779.411. The regulations further clarify that Congress intended the term "retail or service establishment" to include restaurants. *Accord id.* at § 779.320. Because Nusret unquestionably is a restaurant, the first requirement of the Section 7(i) exemption is met.

The second requirement of the 7(i) exemption requires Defendants to show that, in all workweeks where Plaintiffs worked overtime, their regular rate of pay exceeded 1.5 times the minimum hourly rate under federal law.  With regard to this calculation, the Department of Labor ("DOL") has clarified:

> In determining whether or not the employee's regular rate of pay is in excess of one and one-half times the minimum hourly wage as required by section 7(i)(1) of the FLSA, the employer may divide the employee's total earnings attributed to the pay period by the employee's total hours worked during such pay period.  Total earnings include commissions, any part of a draw that exceeds commissions, and supplemental payments, if any, that may have been paid to the employee….

U.S. DOL Wage and Hour Division Field Operations Handbook (the "DOL Handbook"), FOH 2.21h, § 21h03 (Jun. 12, 1990).[3]  *Accord* 29 C.F.R. §§ 778.117-118.

Under this methodology, Defendants have satisfied the second requirement of the 7(i) exemption. Combining their respective base hourly wages and the 18% mandatory service charge that Nusret distributed to them shows that Plaintiffs earned, for all hours worked per week, more than 1.5 times the minimum wage during the relevant period. *See* DOL Handbook, FOH 2.21h, *supra,* at § 21h07 (service charge levied on the customers for services rendered by its servers or other employees may qualify as a commission under the 7(i) exemption.).

As previously explained, the 18% service charge was a commission, ***not a tip***.[4]  The regulations define "tip" as "a sum presented by a customer as a gift or gratuity in recognition of some service performed for him." 29 C.F.R. § 531.52.  By contrast, a "service charge" is defined as a "compulsory charge for service ... imposed on a customer by an employer's establishment, [which] is not a tip, and even if distributed by the employer to its employees, cannot be counted as a tip received..." 29 C.F.R. § 531.55(a).  As these definitions show, "whether an amount added to a bill is a tip or a service charge" primarily depends on

> whether the payment is mandatory or optional, including whether the customer exercises discretion regarding whether the quality of the service merits the payment and the amount of the payment; whether the customers (and/or the recipients of the service) are informed that the payment is optional, and may be increased or decreased at their discretion; and whether in fact there is some variation in the amounts paid. **There must be evidence of actual discretion over the fact of and amount of the payment in order for the amount to be considered a tip and not a service charge.** Such evidence may take any form, including a notation on an invoice, a "chit", a signature on a bill, an email, telephone message, or other notation reflecting directions to adjust the amount of the payment as appropriate.

DOL Handbook, *supra*, at § 30d03, *available at* https://www.dol.gov/agencies/whd/field-operations-handbook/Chapter-30#B30d03 (emphasis supplied); *Nacembeni v. Quayside Place Partners, LLP*, 2010 U.S. Dist. LEXIS 58707 (S.D. Fla. June 11, 2010); *Barenboim v. Starbucks Corp.,* 698 F.3d 104, 112 (2d Cir. 2012); *Mechmet v. Four Seasons Hotels, Ltd*., 825 F.2d 1173,

---

[3] *See, generally, Klinedinst*, 260 F.3d at 1255 (the DOL Handbook is persuasive).

[4] The distinction is important.  Employers may use service charges "in their entirety to satisfy the monetary requirements of the Act." 29 C.F.R. § 531.55(b). In contrast, the FLSA caps (at $5.12 per hour) the amount of tips that employers may include in an employee's regular rate of pay. 29 U.S.C. § 203(m); 29 C.F.R. §§ 531.59, 531.60(b).

1177 (7th Cir. 1987); *Heng Chan v. Triple 8 Palace, Inc.*, 2006 U.S. Dist. LEXIS 15780, *18 (S.D.N.Y. Mar. 31, 2006). *Cf.* IRS Rev. Ruling 2012-18, 2012 IRB LEXIS 339, at Q/A-1 (Jun. 20, 2012) (lack of unrestricted ability to negotiate or remove charge is key distinction between service charge and tip); *United States v. Conforte*, 624 F.2d 869, 874 (9th Cir. 1980) ("essential element" of tip is that it is a "voluntary payment in an amount, and to a person, designated by the customer").

Here, the 18% compulsory charge automatically included on customers' bills was unilaterally dictated by Defendant Nusret Miami. Plaintiffs do not (and factually cannot) dispute that Nusret Miami restricted its customers' ability to determine the amount of the charge and to remove such charge from their bill. *Accord Nacembeni*, 2010 U.S. Dist. LEXIS 58707, at *6-7; *Heng Chan*, 2006 U.S. Dist. LEXIS 15780, at *19; IRS Rev Ruling 2012-18. In short, because customers did not pay the service charge free of compulsion, the 18% automatic service charge levied by Nusret was not a "tip" are deemed wage, which could be used to satisfy its obligations under the FLSA. *Accord Nacembeni*, 2010 U.S. Dist. LEXIS 58707, at *6-7; *Barenboim,* 698 F.3d at 112; *Mechmet*, 825 F.2d at 1177; *Heng Chan*, 2006 U.S. Dist. LEXIS 15780, at *19.

Lastly, the FLSA, and the cases interpreting, authorized Nusret to use the service charges "in their entirety to offset [its] minimum-wage liability under the FLSA." *Id.*; *Mechmet*, 639 F. Supp. at 339 (distribution of fees to servers represented "commissions" under ordinary meaning of the term); 29 C.F.R. § 551.55(a) (service charge such as the one imposed by Nusret is not a gratuity); *id.* at § 779.413(b) (commissions are "keyed to sales" and are a permissible method of compensating service employees); *Id.* at § 779.416 (providing examples compensation representing commissions). *Accord Barenboim,* 698 F.3d at 112; *Heng Chan*, 2006 U.S. Dist. LEXIS 15780, at *19; DOL Handbook, FOH 2.21h, *supra,* at § 21h07.

### 3.  More Than Half of Plaintiffs' Compensation for the Representative Periods Consisted of Commissions.

As a result of these service charge distributions, Plaintiff and the opt-in Plaintiffs' regular rate of pay for each workweek exceeded 1.5 times the minimum wage for all weeks they worked at Nusret. Moreover, more than half of Plaintiffs' compensation from a representative period came from the 18% service charge that Nusret added to patrons' bills. These undisputed facts evidence that Plaintiffs fell within the Section "7(i) exemption" and, as such, were exempt from the overtime requirements of the Act. Any other conclusion would result in further compensation to high-earning individuals, like Plaintiff, and the opt-in plaintiffs, several of

whom earned more than $100,000 per year.  Without doubt, Congress, in enacting the FLSA, did not intend such an absurd result.  *See, generally, Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 510 (1950) (FLSA is a remedial statute designed to "eliminate … substandard labor conditions" by protecting workers who lack sufficient bargaining power to secure a subsistence wage"); *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1176-77 (7th Cir. 1987) (explaining why the policies behind the FLSA overtime provisions would not be served by applying them to high-commissioned waiters).

As discussed above*,* Nusret paid Plaintiffs not based on the actual hours they worked, but rather, on the value of the services they provided to the restaurant.  So, the more successful their shift, the more money Plaintiffs earned. On these undisputed facts, the service charges satisfy the commonly accepted definition of a "commission." *See Nacembeni*, 2010 U.S. Dist. LEXIS 58707, at *6 ("A 'service charge' added by a hotel to every banquet bill, and then distributed (in whole or in part) to its banquet staff, is properly classified as a 'commission,' and not a gratuity, under the FLSA.").  Because more than half of Plaintiffs' compensation for the representative periods consisted of these service charges, *i.e.,* "commissions." Consequently, Defendants have satisfied the third requirement of the 7(i) exemption.

### 4.  Defendants' Are Not Taking a Tip Credit to Satisfy Its Minimum Wage Obligations.

To mislead this Court, Plaintiffs have alleged that Defendants may not apply the 7(i) exemption because Nusret's collection and distribution of the service charges violates 29 U.S.C. § 203(m), which generally allows an employer to offset its minimum wage obligations with an employee's tips.  To take this so-called tip credit, an employer, among other things, may not require "tipped employees"[5] to share tips with employees who do not have regular interaction with customers.  Plaintiffs' counsel fully knows that these provisions do not apply here.[6]  The fact that Nusret satisfied its minimum wage obligations through the service charges collected from patrons vitiated its need to take a tip credit.[7] This Court, therefore, should grant summary

---

[5] A "tipped employee" is someone who customarily and regularly receive more than $30 a month in tips. 29 U.S.C. § 203(t); 29 C.F.R §§ 531.51, 531.56.

[6] Opposing counsel's failure to make such arguments when recently defending an employer against analogous allegations made by a plaintiff speaks volumes.  *See Dalley v. CG RYC, LLC*, 2018 U.S. Dist. LEXIS 150696 (S.D. Fla. Aug. 31, 2018).

[7] *See* 29 C.F.R. § 531.60(b) ("Any tips received by the employee in excess of the tip credit need not be included in the regular rate. *Such tips are not payments made by the employer to the employee as remuneration for employment*

judgment on Plaintiff and the opt-in Plaintiffs' minimum wage and overtime claims in favor of Defendants. These same facts render Plaintiff and the opt-in Plaintiffs tip pool claim superfluous. Distributing the service charges collected from patrons to employees mooted the need for Nusret to take any tips paid to employees as a means to offset its minimum wage obligations under the FLSA. Further, Plaintiff claims that Nusret misappropriated their tips likewise fail. As such allegations do not implicate 29 U.S.C. § 206 (minimum wage) nor 29 U.S.C. § 207 (overtime), Plaintiffs legally may not assert a private cause of action for tip misappropriation under the FLSA. *See* 29 U.S.C. § 216(b) (only employers who violate 29 U.S.C. §§ 206 or 207 are liable under the FLSA); *Malivuk v. Ameripark, LLC*, 694 F. App'x 705, 708-10 (11th Cir. 2017); *Trejo,* 795 F.3d at 445-46; *Labriola v. Clinton Entm't Mgmt., LLC*, 2016 U.S. Dist. LEXIS 37186 (N.D. Ill. Mar. 22, 2016); *Azeez v. Ramaiah*, 2015 U.S. Dist. LEXIS 46574 (S.D.N.Y. Apr. 9, 2015). *Cf. Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."). Accordingly, Plaintiff's claims fail to the extent they are based on a claim that their tips were somehow misappropriated.

### C. CHEF GÖKÇE IS NOT SUBJECT TO INDIVIDUAL LIABILITY BECAUSE HE WAS NOT AN "EMPLOYER" UNDER THE FLSA.

This Court also should grant summary judgment to Defendants on Plaintiff's individual liability claims against Chef Gokce, as he was not an "employer" under the FLSA. The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  This seemingly expansive definition, however, is not without limitation.

In determining whether an individual is an employer for purposes of the FLSA, "[t]he overarching concern is whether [he] possessed the power to control the workers in question."

---

*within the meaning of the Act.*") (emphasis added); *id.* at § 531.59 ("The credit allowed on account of tips may be less than that permitted by statute…; it cannot be more."); DOL Handbook, § 30d01(a) ("[T]ips in excess of the FLSA 3(m) tip credit may not be credited toward an employer's minimum wage obligations[.]"), *available at* https://www.dol.gov/agencies/whd/field-operations-handbook/Chapter-30#B30d03; *Trejo v. Ryman Hospitality Props.,* 795 F.3d 442, 448 (4th Cir. 2015) ("§ 203(m) does not state freestanding requirements pertaining to all tipped employees, but rather creates rights and obligations for employers attempting to use tips as a credit against the minimum wage.") (citation and quotation marks omitted); *Trinidad v. Pret A Manger (USA) Ltd.,* 962 F. Supp 2d. 545, 563 (S.D.N.Y. 2013) (FLSA [section 3] conditions apply only when the employer, unlike Nusret here, pays the employee below minimum wage and relies on a tip credit to supplement that wage); *Livi v. Hyatt Hotels Corp.,* 2017 U.S. Dist. LEXIS 183053, *34 (E.D. Pa. Nov. 6, 2017) (tip credit provisions did not apply where hotel, like Nusret here, paid plaintiff hourly rate more than 1.5 times the minimum wage).

*Herman v. RSR Sec. Servs. Ltd*., 172 F.3d 132, 139 (2d Cir. 1999) (quoting *Goldberg v. Whitaker House Coop*., 366 U.S. 28, 33 (1961)).   More specifically, district courts must consider the "economic realities" of the situation, including (but not limited to) "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (citations omitted). *See also Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) (existence of employer-employee relationship does not depend on isolated factors but rather "upon the circumstances of the whole activity"). *Cf. Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986) (individual may be "employer" where he has "operational control of significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to an employee"); *Phillips v. M.I. Quality Lawn Maint., Inc*., 2011 U.S. Dist. LEXIS 14325, 2011 WL 666145, *8 (S.D. Fla. Feb. 14, 2011) ("Operational control includes things like determining employee compensation, supervising employees, and having the power to hire or fire employees.").

The undisputed evidence establishes that Chef Gökçe was not, and is not, an "employer" within the meaning of the FLSA. Chef Gökçe did not determine employee compensation, did not perform nor oversee the daily operations of the business, did not supervise employees, and delegated to others the authority to hire and fire employees. [SOF ¶¶29-37]. Chef Gökçe acted as the creative side for the business and served as the owner of Nusret in name only. *Id*. He visited the restaurant only rarely and allowed other personnel to handle employment policies and human resources issues, including record-keeping. *Id*. On these undisputed facts, Chef Gökçe does not face employer liability under the FLSA.

### D. ALTERNATIVELY, THIS COURT SHOULD DECERTIFY THE COLLECTIVE ACTION.

To maintain a collective action under the FLSA, Plaintiffs must demonstrate that they are similarly situated. *Accord Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1217 (11th Cir. 2001).   The Eleventh Circuit employs a two-tier approach to guide district courts in determining whether plaintiffs are similarly situated. Throughout both stages, Plaintiffs bear the burden of establishing that they are similarly situated. *Accord Grayson v. K Mart Corp*., 79 F.3d 1086, 1097 (11th Cir. 1996). The standard used during the first stage is fairly lenient insofar as the district court decides whether to conditionally certify a class based only on the affidavits and the plaintiff's allegations and uses a fairly lenient standard to determine whether to certify.  *Accord*

*Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1261 (11th Cir. 2008); *Hipp*, 252 F. 3d at 1217.

In contrast, the second stage requires the district court to make an actual "factual determination on the similarly situated question." *Anderson v. Cagle's*, 488 F.3d 945, 953 (11th Cir. 2007) (citation and quotation marks omitted). The Eleventh Circuit has not drawn a bright line in defining "similarly situated." *Morgan*, 551 F.3d at 1261. Instead, the Court has identified the following three factors to consider in making this determination: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations[.]" *Anderson*, 488 F.3d at 953 (citation and quotation marks omitted). "As part of the third factor, the court will also consider whether it can coherently manage the class in a manner that will not prejudice any party." *Briggins v. Elwood Tri, Inc.*, 882 F. Supp. 2d 1256, 1263 (N.D. Ala. 2012) (citations and quotation marks omitted). As shown below, Plaintiffs have not shown that they are similarly situated beyond sharing manner of pay. As a matter of law, therefore, Plaintiffs are not similarly situated and, as such, this action should be decertified. *Accord Willoughby v. Youth Vills., Inc.*, 113 F. Supp. 3d 1265, 1271 (N.D. Ga. 2015).

### 1. No common unlawful policy unites Plaintiffs.

As a preliminary matter, Plaintiffs have not demonstrated that they were subject to an unlawful systematically-applied company policy or practice such that there exist common questions of law and fact. *Cf. Barron v. Henry County Sch. System*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003) ("[W]hile a unified policy, plan, or scheme of discrimination may not be required to satisfy the more liberal similarly situated requirement, some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency."); *Morano v. Intercontinental Capital Group, Inc.,* 2013 U.S. Dist. LEXIS 12621, *7 (S.D.N.Y. Jan. 25, 2013) (supporting same). At best, Plaintiffs have offered anecdotal evidence that some Nusr-et employees, at times, referred to the automatic service charge as "tips" and, thus, that the distribution of service charges to them constituted an unlawful "tip credit." The reason, as Plaintiffs have argued, is twofold. First, the FLSA precludes employers who use a tip credit from requiring tipped employees, as Nusr-et did here, to share their tips with nontipped employees. 29 U.S.C. § 203(m). Second, the regulations governing the FLSA cap (at $5.12 per hour) the amount of tips that employers may include in an employee's regular rate of pay. 29 C.F.R. § 531.59. In contrast, employers may use service charges "in their entirety," as Nusret

Miami did here, to satisfy the monetary requirements of the" FLSA.  29 C.F.R. § 531.55(b). As discussed below, neither of Plaintiffs' arguments in this regard has legal merit.

### a. The 18% mandatory service charge was not a tip.

The regulations vitiate Plaintiffs' argument that the automatic service charge was a tip.  A "tip" is defined as "a sum presented by a customer as a gift or gratuity in recognition of some service performed for him." 29 C.F.R. § 531.52.  By contrast, a "service charge" is defined as a "compulsory charge for service ... imposed on a customer by an employer's establishment, [which] is not a tip, and even if distributed by the employer to its employees, cannot be counted as a tip received..." 29 C.F.R. § 531.55(a).  As these definitions show, "whether an amount added to a bill is a tip or a service charge" primarily depends on

> whether the payment is mandatory or optional, including whether the customer exercises discretion regarding whether the quality of the service merits the payment and the amount of the payment; whether the customers (and/or the recipients of the service) are informed that the payment is optional, and may be increased or decreased at their discretion; and whether in fact there is some variation in the amounts paid. **There must be evidence of actual discretion over the fact of and amount of the payment in order for the amount to be considered a tip and not a service charge.**  Such evidence may take any form, including a notation on an invoice, a "chit", a signature on a bill, an email, telephone message, or other notation reflecting directions to adjust the amount of the payment as appropriate.

U.S. DOL Wage and Hour Division Field Operations Handbook (the "DOL Handbook"). *Accord Nacembeni v. Quayside Place Partners, LLP,* 2010 U.S. Dist. LEXIS 58707 (S.D. Fla. June 11, 2010); *Barenboim v. Starbucks Corp.,* 698 F.3d 104, 112 (2d Cir. 2012); *Mechmet v. Four Seasons Hotels, Ltd*., 825 F.2d 1173, 1177 (7th Cir. 1987); *Heng Chan v. Triple 8 Palace, Inc.*, 2006 U.S. Dist. LEXIS 15780, *18 (S.D.N.Y. Mar. 31, 2006). *Cf.* IRS Rev. Ruling 2012-18, 2012 IRB LEXIS 339, at Q/A-1 (Jun. 20, 2012) (lack of unrestricted ability to negotiate or remove charge is key distinction between service charge and tip); *United States v. Conforte*, 624 F.2d 869, 874 (9th Cir. 1980) ("essential element" of tip is that it is a "voluntary payment in an amount, and to a person, designated by the customer").

As discussed above, the 18% compulsory charge automatically included on customers' bills was a practice unilaterally dictated by Nusret policy.  Plaintiffs do not (and factually cannot) dispute that Nusret restricted its customers' ability to determine the amount of the charge and to remove such charge from their bill.  That some customers occasionally may have failed or otherwise refused to pay the service charge did not nullify its mandatory nature.  *Accord Heng*

*Chan v. Triple 8 Palace, Inc.*, 2006 U.S. Dist. LEXIS 15780, *18 (S.D.N.Y. Mar. 31, 2006) (service charge that is mandatory is not rendered "optional" solely because disgruntled customer may refuse to pay it).  Likewise, that the service charge may have labeled on bills or occasionally referred to by staff as a "tip" or "gratuity" is of no consequence.  *Accord Nacembeni*, 2010 U.S. Dist. LEXIS 58707, at *6-7; *Heng Chan*, 2006 U.S. Dist. LEXIS 15780, at *19; IRS Rev Ruling 2012-18.   In short, because customers did not pay it free of compulsion, the 18% automatic service charge levied by Nusr-et was not a "tip." *Accord Nacembeni*, 2010 U.S. Dist. LEXIS 58707, at *6-7; *Barenboim,* 698 F.3d at 112; *Mechmet*, 825 F.2d at 1177; *Heng Chan*, 2006 U.S. Dist. LEXIS 15780, at *19.  Consequently, 29 C.F.R. § 531.55(b) authorized Nusret to use the service charges "in their entirety to offset [its] minimum-wage liability under the FLSA."

  **b.  The FLSA's tip credit and pooling requirements do not apply here.**

  Plaintiffs' counsel fully knows that the tip credit and pooling limitations in 29 U.S.C. § 203(m) do not apply here.[8]   As shown above, Nusr-et fully satisfied its minimum wage obligations under the FLSA by distributing the automatic service charges to employees, including Plaintiffs.  Because Plaintiffs received (more than) their minimum wage, the FLSA expressly precluded the additional discretionary tips they received from inclusion in their regular rate of pay. *See* 29 C.F.R. § 531.60(b) ("Any tips received by the employee in excess of the tip credit need not be included in the regular rate. *Such tips are not payments made by the employer to the employee as remuneration for employment within the meaning of the Act*.") (emphasis added); *id.* at § 531.59 ("The credit allowed on account of tips may be less than that permitted by statute…; it cannot be more."); DOL Handbook, § 30d01(a) ("[T]ips in excess of the FLSA 3(m) tip credit may not be credited toward an employer's minimum wage obligations[.]"), *available at* https://www.dol.gov/agencies/whd/field-operations-handbook/Chapter-30#B30d03; *Trejo v. Ryman Hospitality Props.,* 795 F.3d 442, 448 (4th Cir. 2015) ("§ 203(m) does not state freestanding requirements pertaining to all tipped employees, but rather creates rights and obligations for employers [unlike Nusr-et here] attempting to use tips as a credit against the minimum wage.") (citation and quotation marks omitted); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp 2d. 545, 563 (S.D.N.Y. 2013) (FLSA [section 3] conditions apply only when the employer, unlike Nusret here, pays the employee below minimum wage and relies on a tip credit

---

[8] Opposing counsel's failure to make such arguments when recently defending an employer against analogous allegations made by a plaintiff speaks volumes. *See Dalley v. CG RYC, LLC*, 2018 U.S. Dist. LEXIS 150696 (S.D. Fla. Aug. 31, 2018).

to supplement that wage); *Livi v. Hyatt Hotels Corp.*, 2017 U.S. Dist. LEXIS 183053, *34 (E.D. Pa. Nov. 6, 2017) (tip credit provisions did not apply where hotel, like Nusret here, paid plaintiff hourly rate more than 1.5 times the minimum wage).

### 2. Existence of individualized defenses weigh against certification.

Individualized questions of fact among Plaintiffs support decertification of the proposed collective.  For one thing, Plaintiffs likely will argue that the 7(i) exemption discussed above does not apply because one or more of them spent at least 20% of his/her work time performing non-tip related duties.  *See, e.g., Fast v. Applebee's Int'l, Inc.,* 638 F.3d 872, 880-81 (8th Cir. 2011) (tip credit employee can spend up to 20% of work time performing non-tip related duties without losing exemption from full minimum wage compensation).  If the Court applied the 20% rule adopted in *Fast*, Plaintiffs likely would argue that the tip credit and pooling limitations in 29 U.S.C. § 203(m), applied. In that scenario, whether the tip pool was invalidated by the participation of a non-tipped employee would depend, in part, on whether any side work performed by the respective Plaintiffs exceeded 20% of their shifts. There also would a wide array of the type of work that allegedly occurred off-the-clock that will require individualized examination. In addition, the Court would have to consider other factors, including manager-specific side work assignments, shift lengths, positions, and types of side work.  In short, given the breadth of the collective sought, Nusr-et would need to tease out the supervisory and work history of each individual Plaintiff in detail.  *See, e.g., Pellon v. Bus. Representation Int'l, Inc.,* 528 F. Supp. 2d 1306, 1313-14 (S.D. Fla. 2007)  (rejecting plaintiff's argument that non-tip producing tasks took up more than 20% of his work day this claim was exceedingly "intertwined with direct tip-producing tasks throughout the day" such that dividing the intertwined tasks would be "impractical or impossible"), *aff'd*, 291 F. Appx. 310 (11th Cir. 2008).

### 3. Fairness and procedural considerations support decertification.

The preceding discussion highlights the considerable obstacles that may prevent a full and fair single trial of all Plaintiffs' claims as currently certified. Plaintiffs have neither suggested the option of breaking the case into smaller, more discrete collectives, nor provided the Court with sufficiently granular facts to allow the Court to do so on its own.  Rather, Plaintiffs have presented the question of certification as an all-or-nothing proposition. Faced with that scenario, the Court should conclude that concerns of fairness and procedural complications tip against continued certification of the current collective as a whole.

## II.    CONCLUSION

For the foregoing reasons, this Court should grant summary judgment on Plaintiff Compere's claims in favor of Defendants, as well as the claims of the opt-in Plaintiffs. Alternatively, this Court should grant decertification because the evidence of record demonstrates that Plaintiffs are not "similarly situated" such that they may proceed collectively.