UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:19-CV-20277-AHS/McAliley

MELISSA COMPERE, on behalf of herself and
others similarly situated,

Plaintiff,

vs.

NUSRET MIAMI, LLC d/b/a Nusr-et
Steakhouse, a Florida limited liability company,
and NUSRET GOKCE, an individual,

    Defendants.
_____/

## PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1, Plaintiffs hereby respond to Defendants' Statement of Undisputed Material Facts [D.E. #173] and submit Plaintiffs Statement of Undisputed Material Facts, and state the following:

1.    Nusret Miami operates Nusr-Et Steakhouse Miami, an upscale, high volume restaurant offering steakhouse-type cuisine at a high price point in Miami, Florida, which caters to guests from all over the world. [**Ex A** - Soyturk Decl. ¶3].

*Admitted.*

2.    Nusret Miami opened its doors to the public in mid-November 2017. Soyturk Decl. ¶4]. Nusret Miami began the process of interviewing and hiring the employees who were going to work at the Miami Nusr-Et Steakhouse in September and October 2017. [Soyturk Decl. ¶4; **Ex. B.** Aldana Dep. 39:20-40:5].

*Admitted.*

3.  The opening staff underwent a training period, which lasted approximately one month. [**Ex. C**. - Compere Dep. 20:13-17]. Employees were paid an hourly wage of $10.00 per hour during the training period. [**Ex. D**. - Castilla Dep. 20:17-20].

*Admitted.*

4.  The training period is not a part of Plaintiff Compere's and the opt-in Plaintiffs' claims. [Compere Dep. 21:5-7; Aldana Dep. 40:2-5].

*Admitted.*

5.  Since its opening, Nusret Miami included a mandatory 18% service charge equal to 18% of the total sales price on the bills of customers. [Soyturk Decl. ¶5; Aldana Dep. 32:11-15 ("Q. You understood that when you started working as a runner, an 18 percent automatic charge would be applied to each bill, correct? . . . A. Yes."); Compere Dep. 84:21-25 ("Q. When the service charge was implemented, and we've already established you mentioned it was the end of April 2018; am I correct? A. No. From the beginning of the restaurant opening, we had [the] 18%")].

*Denied that the service charge was mandatory.  **Exhibit "1"** hereto at ¶12 and photographs attached thereto as Exhibits "A" and "B."  Named Plaintiff, MELISSA COMPERE testified at her deposition that the "service "charges" were discretionary and could be removed by Managers [D.E. #173-3, T.88:23-T. 89:9].  Plaintiff, ALDA CASTILLA testified that Managers removed the "service charges" from customers' bills. [D.E. #173-4, T.22:2-9].   Plaintiff, SLAGJANA KOVACHAVSKA also testified that the Managers removed the Gratuities from her customers' bills. [D.E. #173-6, T.58:10-25].*

6.     Since its inception, the menu at Nusret Miami specifically informed restaurant guests that a "18% service charge will be added to [the guest's] final bill and will be distributed to the entire team." [Soyturk Decl. ¶6, Ex. 1]. To date, the language contained in Nusret Miami's menus regarding the mandatory service charge has not changed. *Id*.

*Denied that the language on the menu was sufficient to put customers on notice of the service charge. Exhibit "1" at ¶¶6 & 11.  Plaintiffs also object because Defendants have not produced all of the different types of menus (bar menu, food menu, wine menu, etc).*

7.     The 18% service charge was mandatory and could not be negotiated and/or changed by a customer. [Soyturk Decl. ¶7]. In fact, the charge was rarely -- if ever taken off a guest bill -- and never by the guest or the customer. *See e.g*. [**Ex. E** - Burgos Dep. 58:21-24 ("Q. You don't have personal knowledge of the automatic charges ever being removed or changed off of a guest bill, correct? A. No, I never saw that happen on any bill."); Castilla Dep. 27:1-4 ("Q. During the time you worked at Nusret Miami, did any guests you served have the 18% removed from their bill? A. Not with me, no."); Aldana Dep. 48:11-15 ("Q. Do you have any personal knowledge of that happening at any point during your employment at the restaurant . . .. A. I'm not sure."); **Ex. F** - Kovachevska Dep. 58:10-12 ("Q. Whenever you served guests at the bar, 18 percent was automatically applied? A. Yes.")].

*Admitted that the deposition testimony is accurate as cited. Denied that the service charge was mandatory. Exhibit "1" hereto at ¶12 and photographs attached thereto as Exhibits "A" and "B." Named Plaintiff, MELISSA COMPERE testified at her deposition that the "service "charges" were discretionary and could be removed by Managers [D.E. #173-3, T.88:23-.T.89:9]. Plaintiff, ALDA CASTILLA testified that Managers removed the "service charges" from*

*customers' bills. [D.E. #173-4, T.22:2-9]. Plaintiff, SLAGJANA KOVACHAVSKA also testified that the Managers removed the Gratuities from her customers' bills. [D.E. #173-6, T.58:10-25].*

8.  Plaintiff Compere testified that the 18% charge that was placed on checks was sometimes referred to as a gratuity initially and "eventually a service charge." [Compere Dep. 87:6-13]. Though mandatory, Compere testified that she thinks the automatic charge was taken off a bill two times on two occasions by management -- following customer complaints. [Compere Dep. 88:7-13; 88:17-18) ("I personally know of two instances, maybe it happened.")].

*Admitted that Named Plaintiff Compere testified that the 18% charge that was placed on checks was sometimes referred to as a gratuity initially and "eventually a service charge." [Compere Dep. 87:6-13]. Denied that the "service charges" were only removed two (2) times from customers' bills. [Compere Dep. 88:7-13; 88:17-18]. Named Plaintiff, MELISSA COMPERE testified at her deposition that the "service "charges" were discretionary and could be removed by Managers [D.E. #173-3, T.88:23-.T.89:9].*

9.  The final guest bill presented to customers contained a separate line where customers could include a discretionary monetary amount to be charged to their credit card as a tip, exclusive of the 18% service charge included in the final bill. Customers were also able to leave cash tips at their discretion. [Aldana Dep. 32:17-22) ("Q. Customers have the opportunity to leave an additional amount as what you described as a gratuity, correct? . . . A. Yes, the customer had the opportunity to leave something else as well, yes.")].

*Admitted.*

10. The amounts collected from the service charge were distributed in their entirety to service employees on a pro-rata basis, except for a 2.65% of service charges when customer

guest bills were paid by credit card to account for credit card processing fees. [Castilla Dep. 25:21-24 ("Q. And sometimes in addition to the automatic charges that were applied to guest bills, customers could leave additional gratuities, correct? A. Yes."), 27:1-18 ("Q. During the time you worked at Nusret Miami, 18% percent was added to guest bills, correct? A. Yes.")].

*Denied that the amounts collected from the service charge were distributed in their entirety to service employees on a pro-rata basis, except for a 2.65% of service charges when customer guest bills were paid by credit card to account for credit card processing fees. [Castilla Dep. 25:21-24]. Named Plaintiff, MELISSA COMPERE testified with regard to employees who performed non-tipped work being given a portion of the Gratuities D.E. #173-3, T.65:16-24; D.E. #173-3, T.173:12-T.174:6].* **Exhibit "2"** *hereto at ¶¶3-6.*

11.     The amounts collected from cash and credit card tips collected from customers were also distributed in their entirety to service employees on a pro-rata basis, except for a 2.65% of tips left on credit cards to account for credit card processing fees. [Soyturk Decl. ¶8].

*Denied. Named Plaintiff, MELISSA COMPERE testified with regard to employees who performed non-tipped work being given a portion of the Gratuities D.E. #173-3, T.65:16-24; D.E. #173-3, T.173:12-T.174:6]. Exhibit "2" hereto at ¶¶3-6.*

12.     Per company policy, only service employees were permitted to participate in the tip and service charge distribution pools. [Soyturk Decl. ¶9]. Members of management were not permitted to participate in the distribution pools and did not do so. [Soyturk Decl. ¶9].

*Denied that per company policy, only service employees were permitted to participate in the tip and service charge distribution pools. [Soyturk Decl. ¶9]. Named Plaintiff, MELISSA COMPERE testified with regard to employees who performed non-tipped work being given a*

*portion of the Gratuities D.E. #173-3, T.65:16-24; D.E. #173-3, T.173:12-T.174:6]. Exhibit "2" hereto at ¶¶3-6.*

*Denied that members of management were not permitted to participate in the distribution pools and did not do so. [Soyturk Decl. ¶9]. Plaintiffs' counsel has been unable to obtain Affidavits from their clients to rebut this evidence.*

13.     From November 13, 2017 through April 29, 2018, Nusret paid Plaintiffs biweekly compensation consisting of an hourly rate and a portion of the 18% service charge which Nusret automatically imposed on and collected from its customers. [Soyturk Dep. 33:1-8; Compere Dep. 39:16-40:3; 41:24-42:6; Soyturk Decl. ¶8].

*Admitted except that the "service charges" were not mandatory.  Exhibit "1" hereto at ¶12 and photographs attached thereto as Exhibits "A" and "B." Named Plaintiff, MELISSA COMPERE testified at her deposition that the "service "charges" were discretionary and could be removed by Managers [D.E. #173-3, T.88:23-.T.89:9].  Plaintiff, ALDA CASTILLA testified that Managers removed the "service charges" from customers' bills. [D.E. #173-4, T.22:2-9]. Plaintiff, SLAGJANA KOVACHAVSKA also testified that the Managers removed the Gratuities from her customers' bills. [D.E. #173-6, T.58:10-25].*

14.     Separate from these wages, Plaintiffs also received tips that customers voluntarily and gratuitously paid. [**Ex. G** - Soyturk Dep. (Corp Rep.) 62:24-25, 63:1-7; Aldana Dep. 31:23-32:1("Q. [W]hen they picked everybody, they informed us in the meeting that they were going to pay us by hour and gratuities and tips.")].

*Admitted.*

15. The automatic service charges and the discretionary tips were pooled and distributed to Plaintiffs utilizing a point system methodology. [Compere Dep. 39:16-40:3; 41:24-42:6]. The regular rate of pay for Plaintiff and each opt-in Plaintiff who worked prior to April 30, 2018, was calculated by dividing their total remuneration for each workweek by the total number of hours each of them worked that week, excluding tips. [Soyturk Dep. 33:1-8].

*Admitted except that the "service charges" were not mandatory. Exhibit "1" hereto at ¶12 and photographs attached thereto as Exhibits "A" and "B." Named Plaintiff, MELISSA COMPERE testified at her deposition that the "service "charges" were discretionary and could be removed by Managers [D.E. #173-3, T.88:23-.T.89:9]. Plaintiff, ALDA CASTILLA testified that Managers removed the "service charges" from customers' bills. [D.E. #173-4, T.22:2-9]. Plaintiff, SLAGJANA KOVACHAVSKA also testified that the Managers removed the Gratuities from her customers' bills. [D.E. #173-6, T.58:10-25].*

16. Each Plaintiff was paid an overtime premium consisting of one-half his/her regular rate for each hour worked over 40 per week. [Compere Dep. 59:11-14) ("A. When we were paid hourly wage, I would receive overtime compensation")].

*Denied as phrased because the cited testimony does not identify the time period. Also denied because Defendants did not pay any wages to Plaintiffs and instead merely gave Plaintiffs the monies ("service charges") left by customers and tips from customers. Because the "service charges" were not included in the gross receipts, they were tips. This is a legal conclusion which is fully supported by Plaintiffs' Response to the Motion for Summary Judgment.*

17. Nusret did not apply tips to satisfy its monetary obligations under the FLSA because Plaintiffs' wages exceeded the applicable minimum wage. [Compere Dep. 35:7-10, 14-16, 36:3-6, Ex. 5; *See also*, D.E. 158 (Nusret withdrawal of tip credit defense)].

*Denied because Defendants did not pay any wages to Plaintiffs and instead merely gave Plaintiffs failed "service charges" and tips from customers. Because the "service charges" were not included in the gross receipts, they were tips. This is a legal conclusion which is fully supported by Plaintiffs' Response to the Motion for Summary Judgment.*

18. Beginning on April 30, 2018, Nusret changed its compensation structure to eliminate the hourly wage component of the compensation received by service employees, with the exception of the hostesses, and eliminate overtime payments. [Soyturk Decl. ¶10].

*Admitted.*

19. Employees were informed of the change to the pay structure during a meeting on or April 30, 2018 and were provided with written notices of the Section 7(i) exemption. [Soyturk Decl. ¶11; Compere 74:10-16)].

*Admitted.*

20. Despite the change its compensation structure, Nusret continued to pay its service employees their portion of the mandatory 18% service charge. [Soyturk Decl. ¶11]. Compere testified that before and after this period, the service charge - whether labeled a gratuity or service charge -- was ***mandatory***. [Compere Dep. 123:6-9 ("[W]e were told that the service charge was mandatory as if it was an item that a person ordered it, it had to be on the check."); Compere Dep. 124:1-4 ("Q. You mentioned there was that there was an 18% gratuity until the

end of April 2018, and then it said 18% service? A. Correct Q. Was there a different as far as the customers. A. No. It was supposed to be mandatory for every check.")].

*Denied that despite the change its compensation structure, Nusret continued to pay its service employees their portion of the mandatory 18% service charge. [Soyturk Decl. ¶11]. Denied that the "service charges" were mandatory.  Exhibit "1" hereto at ¶12 and photographs attached thereto as Exhibits "A" and "B." Named Plaintiff, MELISSA COMPERE testified at her deposition that the "service "charges" were discretionary and could be removed by Managers [D.E. #173-3, T.88:23-.T.89:9].  Plaintiff, ALDA CASTILLA testified that Managers removed the "service charges" from customers' bills. [D.E. #173-4, T.22:2-9].  Plaintiff, SLAGJANA KOVACHAVSKA also testified that the Managers removed the Gratuities from her customers' bills. [D.E. #173-6, T.58:10-25].*

*Named Plaintiff, MELISSA COMPERE testified with regard to employees who performed non-tipped work being given a portion of the Gratuities.  Therefore, the service employees did not receive "their portion of the service charges." D.E. #173-3, T.65:16-24; D.E. #173-3, T.173:12-T.174:6].  Exhibit "2" hereto at ¶¶3-6.*

21.   Nusret retained the services of HR on Demand to review its pay policies and HR on Demand, who assisted Nusret in explaining to its employees that their pay was lawful under 29 U.S.C. § 207(i). [Soyturk Dep. 53:11-19, 54:17-25, & 55:1-6 & 18-19].

*Admitted.*

22.   With the exception of hostesses, Plaintiffs no longer received an hourly wage, but rather, relied on the portion of the service charges collected by Nusret (which portions, by themselves, exceeded 1.5 times the applicable minimum wage). [Soyturk Dep. 113:13-16].

*Admitted except that Defendants did not pay any wages to Plaintiffs and instead merely gave Plaintiffs failed "service charges" and tips from customers. Because the "service charges" were not included in the gross receipts, they were tips. This is a legal conclusion which is fully supported by Plaintiffs' Response to the Motion for Summary Judgment.*

23.   Plaintiff and the opt-in Plaintiffs were instructed to record all hours worked and to ensure that all hours worked were properly recorded. [Castilla Dep. 37:7-13 ("Q. You were required to clock in and out for every single one of your shifts during the entire duration of your employment at Nusret, correct? A. Yes. Q. It was your responsibility to accurately record all of your time worked? A. It's automatic, yes. It's automatic."); Aldana Dep. 47:2-5 ("Q. You understood that during your employment at Nusret you were required to clock in and out for all your shifts, right? A. Yes."); Burgos dep. 24:2-4 ("Q. It was your responsibility to clock in and out for work, right? A. Correct?")].

*Admitted.*

24.   If for any reason an employee forgot to clock in or out, the employee was required to report it to a member of management who would then correct the employee's time punch. Aldana Dep. 47:11-15 ("Q. And on those occasions where you might have forgot to punch in or out, you had the opportunity to go to human resources and request that they reflect your time punches accurately in their system, right? A. Yes. Q. And did you do that? A. Yes, of course."); Burgos Dep. 24:10-13 ("Q. And on those occasions when you forgot to clock in you could tell a manger and have them punch for you, right? A. Correct.")].

*Admitted.*

25. Plaintiff and the opt-in Plaintiffs have no reason to dispute the accuracy of their time and payroll records. Castilla Dep. 37:7-13("Q. Do you have reason to believe that the company's records reflecting your hours worked are inaccurate for nay reason? A. No."); Aldana Dep. 39:8-11 ("Q. Do you dispute that this is accurate representation of your hours worked? A. I'm not disputing the hours."); Burgos Dep. 50:1-17 ("Q. Does that document accurately reflect the amount and type of compensation you received for the pay periods identified? A. Correct. Q. All the same information . . . was also provided for in your pay stubs? A. Correct.").

*Admitted.*

26. Service employees were instructed to place cash tips in a red tip box at the end of each shift. [Soyturk Decl. ¶14; Employees were required to immediately place cash tips in the tip box and were terminated if they were caught keeping cash. [Compere Dep. 111:20-23].

*Admitted.*

27. Nusret distributed the cash tips in their entirety to the service staff on a pro rata basis. [Soyturk Decl. ¶14].

*Denied that Nusret distributed the cash tips in their entirety to the service staff on a pro rata basis. [Soyturk Decl. ¶14]. Named Plaintiff, MELISSA COMPERE testified with regard to employees who performed non-tipped work being given a portion of the cash tips. D.E. #173-3, T.65:16-24; D.E. #173-3, T.173:12-T.174:6]. Exhibit "2" hereto at ¶¶3-6.*

28. Plaintiff and the opt-in Plaintiffs have no personal knowledge of whether cash tips were misappropriated. [Compere Dep. 111:24-112:4 ("Do you have personal knowledge with respect to whether or not the cash after it went to the box and accumulated, if the cash was distributed to everyone in the tip pool accordance to a point system? A. It could have been, but

I'm not sure.") Castillo Dep. 54:24-55:8 ("Q. Do you have any reason to believe that cash tips, all of the cash tips that were collected, were not distributed to the front of the house staff? A. I don't know."); Kovachevska Dep. 61:20-25 ("Q. Do you have any personal knowledge of anyone stealing cash from the tip box? A. No, I can't tell you that.")].

*Denied as phrased. Named Plaintiff, MELISSA COMPERE testified with regard to employees who performed non-tipped work being given a portion of the cash tips. D.E. #173-3, T.65:16-24; D.E. #173-3, T.173:12-T.174:6]. Exhibit "2" hereto at ¶¶3-6.*

29. Chef Gocke is not involved in the day-to-day running of the business. [Soyturk Dep. 58:3-9]. In fact, Chef Gokce "[was] rarely in" Miami. [Soyturk Dep. 99:8-25].

*Denied. Ms. Castilla testified that Mr. Gokce was the ultimate decision maker for all decisions made at the restaurant including which employees could work the more profitable shifts. [D.E. #173-4, T.68:2-12].*

30. Chef Gokce provides guidance with large decisions "in terms of where to put the new restaurants, which lease to sign." [Soyturk Dep. 58:9-14].

*Admitted.*

31. Chef Gokce does not do any of the actual hiring or firing of employees. [Soyturk Dep. 100:2-24; Castilla Dep. 39:9-15 ("Q. Do you know who has the authority to hire employees at Nusret? A. Back at that time it was Yusuf. Q. Anybody, else? A. Murat. Q. Anybody else? A. No.")].

*Admitted that the deposition testimony is correctly cited. Denied that Mr. Gokce does not hire employees. Mr. Gokce interviewed and hired Plaintiff, MELISSA COMPERE. [D.E. #173-3,T.20:13-21:8]. Mr. Gokce also interviewed and hired Plaintiff, SLAGJANA KOVACHAVSKA. [D.E. #173-6, T.18:11-T.19:4]. Mr. Gokce also interviewed and hired Plaintiff, ALDALYANNE*

ALDANA. [D.E. #173-2,T.30:11-T.31:7].

32. Chef Gokce did not have the authority to even direct Human Resources to make specific decisions regarding employees, including hiring management. [**Ex. H** - Gokce Dep. 154:13-155:20; 164:7-15; 166:14-23]. Even the General Manager of the restaurant did not report to Chef Gokce. [Gokce Dep. 147:1-14].

*Denied. Mr. Gokce interviewed and hired Plaintiff, MELISSA COMPERE. [D.E. #173-3,T.20:13-21:8]. Mr. Gokce also interviewed and hired Plaintiff, SLAGJANA KOVACHAVSKA. [D.E. #173-6, T.18:11-T.19:4]. Mr. Gokce also interviewed and hired Plaintiff, ALDALYANNE ALDANA. [D.E. #173-2,T.30:11-T.31:7]. Plaintiff, ALDA CASTILLA testified that Mr. Gokce also had control over the hours to be worked by all of the employees at the restaurant. [D.E. #173-4, T.39:24-T.40:5]. Ms. Castilla also testified that Mr. Gokce was the ultimate decision maker for all decisions made at the restaurant including which employees could work the more profitable shifts. [D.E. #173-4, T.68:2-12].*

33. Chef Gokce did not train potential employees. [Gokce Dep. 97:19-98:1 ("Q. Isn't it true that you interviewed future employees at Nusret Miami before they were hired, during the hiring process? A. I didn't really talk to them but I just said hi and I introduced myself.")].

*Denied. Exhibit "2" hereto at ¶¶11-13. Mr. Gokce interviewed and hired Plaintiff, MELISSA COMPERE. [D.E. #173-3,T.20:13-21:8]. Mr. Gokce also interviewed and hired Plaintiff, SLAGJANA KOVACHAVSKA. [D.E. #173-6, T.18:11-T.19:4]. Mr. Gokce also interviewed and hired Plaintiff, ALDALYANNE ALDANA. [D.E. #173-2,T.30:11-T.31:7]. Plaintiff, ALDA CASTILLA testified that Mr. Gokce also had control over the hours to be worked by all of the employees at the restaurant. [D.E. #173-4, T.39:24-T.40:5]. Ms. Castilla also testified that Mr.*

*Gokce was the ultimate decision maker for all decisions made at the restaurant including which employees could work the more profitable shifts. [D.E. #173-4, T.68:2-12].*

34.  Chef Gokce does not set employees' hours or schedules. [Gokce Dep. 93:7-94:6 ("Q. Do [employees] make their own decisions about when to arrive and when to leave? A. The management decides on that. That's not my decision.")].

*Denied. Mr. Gokce interviewed and hired Plaintiff, MELISSA COMPERE. [D.E. #173-3,T.20:13-21:8]. Mr. Gokce also interviewed and hired Plaintiff, SLAGJANA KOVACHAVSKA. [D.E. #173-6, T.18:11-T.19:4]. Mr. Gokce also interviewed and hired Plaintiff, ALDALYANNE ALDANA. [D.E. #173-2,T.30:11-T.31:7]. Plaintiff, ALDA CASTILLA testified that Mr. Gokce also had control over the hours to be worked by all of the employees at the restaurant. [D.E. #173-4, T.39:24-T.40:5]. Ms. Castilla also testified that Mr. Gokce was the ultimate decision maker for all decisions made at the restaurant including which employees could work the more profitable shifts. [D.E. #173-4, T.68:2-12].*

35.  Chef Gokce does not direct managers where or how to purchase menu items. [Gokce Dep. 60:12-62:7].

*Admitted.*

36.  After the restaurant opened, Chef Gokce was rarely at the restaurant. (Castilla Dep. 38:12-18 ("Q. After the restaurant opened . . . how often did you see Chef in the restaurant? A. They could have been every two months or every month, every three months"); [Burgos Dep. 16:4-7 ("Q. How many times did you see Chef Nusret at the restaurant during the entire time you were employed there [December 2017 - July 2018]? A. Two times.")].

*Denied as phrased.*

37.     Chef Gokce did not participate in any decision making with respect to the issue of tip credits, salary increases or decreases, or other issues decided by management or Human Resources. [Gokce Dep. 150:7-152:20; 153:6-154:11].

*Denied. Mr. Gokce interviewed and hired Plaintiff, MELISSA COMPERE. [D.E. #173-3,T.20:13-21:8]. Mr. Gokce also interviewed and hired Plaintiff, SLAGJANA KOVACHAVSKA. [D.E. #173-6, T.18:11-T.19:4]. Mr. Gokce also interviewed and hired Plaintiff, ALDALYANNE ALDANA. [D.E. #173-2,T.30:11-T.31:7]. Plaintiff, ALDA CASTILLA testified that Mr. Gokce also had control over the hours to be worked by all of the employees at the restaurant. [D.E. #173-4, T.39:24-T.40:5]. Ms. Castilla also testified that Mr. Gokce was the ultimate decision maker for all decisions made at the restaurant including which employees could work the more profitable shifts. [D.E. #173-4, T.68:2-12].*

38.     The Florida minimum wage during the relevant time period (November 1, 2017 through January 18, 2019) was $8.10 for 2017, $8.46 per hour for 2018 and 2019. Plaintiffs were paid at least one-and-a half times the minimum wage rate ($12.69 / hr) for all hours worked.

*Admitted that the Florida minimum wage during the relevant time period (November 1, 2017 through January 18, 2019) was $8.10 for 2017, $8.46 per hour for 2018 and 2019.*

*The remainder is denied as phrased because Defendants did not pay any wages to Plaintiffs and instead merely gave Plaintiffs failed "service charges" and tips from customers. Because the "service charges" were not included in the gross receipts, they were tips. This is a legal conclusion which is fully supported by Plaintiffs' Response to the Motion for Summary Judgment.*

39. At all times during the relevant periods, Plaintiff Compere, and the opt-in Plaintiffs, received wages that exceeded more than 1.5 times the federal minimum wage. [Soyturk Dep. 29:13-15, 30:5-8, 11-12, 31:4-6, 50:18-23, 61:5-11].

*Denied as phrased because Defendants did not pay any wages to Plaintiffs and instead merely gave Plaintiffs failed "service charges" and tips from customers. Because the "service charges" were not included in the gross receipts, they were tips. This is a legal conclusion which is fully supported by Plaintiffs' Response to the Motion for Summary Judgment.*

40. Furthermore, more than 50% of Plaintiffs' total monthly earnings consisted of their portion of the automatic service charges collected and distributed by Nusret. [Soyturk Decl. ¶12; [Soyturk Dep. 41:8-11, 50:1-15]. For example, the following Plaintiffs were paid for all hours worked during the following representative periods:

*Denied as phrased because Defendants did not pay any wages to Plaintiffs and instead merely gave Plaintiffs failed "service charges" and tips from customers. Because the "service charges" were not included in the gross receipts, they were tips. This is a legal conclusion which is fully supported by Plaintiffs' Response to the Motion for Summary Judgment.*

Respectfully Submitted, May 4, 2020,

By:    /s/ Sundeep K. Mullick
Sundeep K. Mullick, Esq.
Florida Bar No. 18175
sunny@kuvinlaw.com
legal@kuvinlaw.com
*Law Office of Lowell J. Kuvin, LLC*
17 East Flagler Street, Suite 223
Miami, Florida 33131
Tel.: 305.358.6800
Fax: 305.358.6808
*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will automatically send a copy to all counsel of record in this case.

                /s/ Sundeep K. Mullick
                Sundeep K. Mullick, Esq.